RANDOLPH, Presiding Justice,
for the Court:
¶ 1. The motions for rehearing filed by the Mississippi Power Company and the Public Service Commission are denied. The original opinions are withdrawn and these opinions are substituted therefor.
¶ 2. Thomas Blanton asks this Court to invalidate rate increases approved by the Public Service Commission (“Commission”) for Mississippi Power Company (“MPC”). An examination of controlling law and statutes, the Constitutions of the United States and Mississippi, and a comprehensive review of the proceedings before us reveals that the Commission failed to comply with the language of the Base Load Act,[1] inter alia, and exceeded its authority granted by the Act. The increased rates were achieved by including “mirror CWIP” in the rate base and rates. Following the inclusion of “mirror CWIP,” the Commission “approve[d] the retail revenue adjustment over 2013 and 2014 ... allowing] the Company an annual rate designed to collect $125,000,000 for 2013, escalating to $156,000,000 in 2014. This represents a 15% and 3% increase, respectively.” Commission’s Final Order, p. 24 (Mar. 5, 2013).[2] The increased rates for 186,000 South Mississippi ratepayers fail to comport with the Act or, otherwise, with our law. Accordingly, the order granting rate increases is reversed, and this matter is remanded to the Commission for proceedings consistent with this opinion.

I. BACKGROUND

¶ 3. In State ex rel. Pittman v. Mississippi Public Service Commission, 520 So.2d 1355 (Miss.1987), this Court declared no authority existed for the Commission to “grant a rate increase for power never delivered.” Pittman, 520 So.2d at 1363. Twenty-one years later, the Legislature passed the Base Load Act as an alternative method of cost recovery for base load generation, “eff[ective] from and after passage (approved May 9, 2008).” See Miss. Code Ann. §§ 77-3-101 to 77-3-109. Section 77-3-105(l)(a) reads:
The commission is fully empowered and authorized to include in an electric public utility’s rate base and rates, as used and useful components of furnishing electric service, all expenditures determined to be prudently-incurred pre-con-struction, construction, operating and related costs that the utility incurs in connection with a generating facility (including but not limited to all such costs contained in the utility’s “Construction Work in Progress” or “CWIP” accounts), whether or not the construction of any generating facility is ever commenced or completed, or the generating facility is placed into commercial operation. However, all costs incurred before May 9, 2008 may be reflected in rates only upon an order of the Public Service Commission after a finding of prudency.
Miss.Code Ann. § 77-3-105(l)(a) (Rev. 2009) (emphasis added). Section 77-3-105(l)(b) reads:
The commission is further empowered and authorized to allow a public utility to *909 accrue a just and reasonable rate of return to be determined by the commission on the unrecovered balance of any pre-construction or construction costs which shall include all costs incurred before May 9, 2008 and such costs may be reflected in rates only upon an order of the Public Service Commission after a finding of prudency.
Miss.Code Ann. § 77 — 3—105(l)(b) (emphasis added). The Act permits recovery of prudently incurred “preconstruction” costs, even if construction never “eom-mencefe]”; permits recovery of prudently incurred “construction” costs, even if the' plant is never “completed”; and permits recovery of prudently incurred “operating and related costs,” even if the facility is never “placed into commercial operation.” The Act further permits a “just and reasonable rate of return,” only upon a determination of prudency. Whether it be costs incurred or a rate of return, the Commission is required to make a determination of prudency.
¶ 4. Following its enactment, MPC, whose assets then totaled approximately $2 billion ($2,000,0000,000), petitioned the Commission to approve the Kemper Project, projecting a net cost of $2.2 billion ($2,200,000,000) and a completion date of May 2014. In its most recent “Monthly Status Report” to the Commission in Docket No. 2009-UA-0014, dated February 3, 2015, MPC now projects the costs at more than $6,172 billion ($6,172,200,000), a 281% increase from the original net cost. There has been an increase of $68 million ($68,000,000) since MPC’s monthly status report filed on October 2, 2014 — a $25 million ($25,000,000) increase reported on January 2, 2015, and a $43 million ($43,-000,000) increase reported on February 3, 2015.[3] The original certification for $2.88 billion ($2,880,0000,000) is less -than one half of the now-projected costs.
¶ 5. MPC requested approval of its Certified New Plant, Rate Schedule CNP-A, a rate mechanism designed to provide recovery of the construction financing costs during the construction period.[4] The Commission denied MPC’s CNP-A rate schedule, and MPC appealed the denial to this Court, arguing that the Commission acted arbitrarily and capriciously when it denied MPC CWIP recovery. Blanton intervened in the appeal and also filed a separate appeal. By agreement, MPC and the Commission dismissed MPC’s appeal. However, Blanton’s appeal is properly before this Court.

II. ISSUES

¶ 6. Blanton’s arguments, inter alia, are stated verbatim as follows:
1. Do CWIP assessments under the Mississippi “Base Load Act” (Sec-' tion 77-3-101 et seq., of the Mississippi Code of 1972, as amended) constitute an unauthorized illegal tax?
2. Is Section 77-3-101 et seq. (The Base Load Act) in violation of the Mississippi Constitution and the Constitution of the United States?
3. Do CWIP assessments under the Mississippi “Base Load Act” constitute substantive confiscatory takings in violation of the Due Process Clause of the Fourteenth Amend *910 ment to the United States Constitution and/or the Due Process Clause of the Mississippi Constitution (Art. 3, § 14)?
4. Whether the “Settlement Agreement” is an invalid instrument and should be vacated.

III. STANDARD OF REVIEW

¶ 7. “When reviewing the constitutionality of a legislative enactment, there is a strong presumption of validity....” City of Starkville v. 4-Cnty. Elec. Power Ass’n, 909 So.2d 1094, 1112 (Miss.2005) (citing Richmond v. City of Corinth, 816 So.2d 373, 375 (Miss.2002)). However, it is well-settled that “a constitutional question will be passed on where the issues involved in a particular case are such that the case may be decided on other grounds.” Warner-Lambert Co. v. Potts, 909 So.2d 1092, 1093 (Miss.2005) (citing Broadhead v. Monaghan, 238 Miss. 239, 255, 117 So.2d 881, 888 (1960)).[5]
 ¶ 8. Pursuant to Section 77-3-72 of the Mississippi Code, the Commission’s Order
shall not be vacated or set aside either in whole or in part, except for errors of law, unless the court finds that the order of the commission is not supported by substantial evidence, is contrary to the manifest weight of the evidence, is in excess of the statutory authority or jurisdiction of the commission, or violates constitutional rights.
Miss.Code Ann. § 77-3-72(4) (Rev.2009).
While broad authority and discretion has been promulgated in favor of the Commission that power is not unbridled and the rules and regulations which it has promulgated to aid in the fulfillment of its duties under the chapter must not be utilized in an arbitrary or capricious manner, “It is clear under Mississippi law that an administrative agency cannot exceed the scope of authority which was granted to it by the legislature, (citations omitted).” Mississippi Board of Nursing v. Belk, 481 So.2d 826, 829 (Miss.1985). Further, the Commission’s authority to interpret the statutes under which it operates may not supersede the requirements thereof, nor may it conflict with pertinent rules of law. Capital Electric Power Association v. Mississippi Power & Light Co., 240 Miss. 139, 153, 125 So.2d 739, 744 (1961).
Pittman, 520 So.2d at 1357-58.

VI. ANALYSIS

A. Tax

¶ 9. Blanton first asks this Court to declare CWIP assessment an illegal tax. The “essential feature of any tax [is that] it produces at least some revenue for the Government!,]” and that revenue is intended “for the use and benefit of that government.” Nat’l Fed’n of Indep. Business v. Sebelius, — U.S. -, 132 S.Ct. 2566, 2594, 183 L.Ed.2d 450 (2012); Austin v. Centerpoint Energy Arkla, 365 Ark. 138, 226 S.W.3d 814, 820 (2006). A tax is paid to the government, not a “privately-owned corporate entitfy]” which is “not [an] arm[ ] of the State.” Austin, 226 S.W.3d at 820. These essential elements are not present in the case sub judice.
¶ 10. The assessment is not paid to the government — -it is paid by the ratepayers to MPC. The exaction imposed is not used for the support of our government. “Mirror CWIP” is not an illegal tax, for it is not a tax at all.

*911
B. Commission’s Application of the Statute

¶ 11. Assuming the presumptive validity of the Act, see City of Starkville, 909 So.2d at 1112, and following our precedent to pass on constitutional challenges when cases may be decided on other grounds, see Warner-Lambert, 909 So.2d at 1093, we choose the narrower path to resolve the issues presented today. Thus, we examine whether the Commission applied the Act in a statutorily permissible manner. If the Commission’s putative application of the Act follows the directives and its application comports with due-process principles, Blanton’s arguments are doomed to fail.
¶ 12. While the Court gives great deference to state agencies, “[t]he ultimate authority and responsibility to interpret the law, including statutes, rests with this Court.” Queen City Nursing Ctr., Inc. v. Miss. State Dep’t of Health, 80 So.3d 73, 84 (Miss.2011). The Legislature had authority to enact a law; however, the Commission does not have the right to amend or modify such act. No legitimate argument can overcome the legal principle that the Commission is bound to comply with legislative acts. See Pittman, 520 So.2d at 1357-58. See also Howell v. State, 300 So.2d 774, 779 (Miss.1974) (“an administrative agency cannot be vested with an arbitrary and uncontrolled discretion.”).
¶ 13. The Act permits the Commission to include CWIP only if the costs are determined to be “prudently incurred.” See Miss.Code Ann. § 77-3-105 (Rev. 2009).[6] MPC and the Commission argue that the Act was followed when the Commission authorized MPC to increase rates by fifteen percent for 2013 and three percent for 2014. Yet the record is devoid of a “finding of prudency” or that MPC’s expenditures were “prudently incurred,” and for good reason — no prudency hearings have been held. In the absence of prudency hearings, we fail to discern how a rate can be arbitrarily declared as “fair, just, and reasonable” and/or “just and reasonable.” See Miss.Code Ann. §§ 77-3-33 and 77-3-105(b) (Rev.2009).
¶ 14. Paragraph 22 of MPC’s original petition for certification reads: “... the Company is proposing and requesting ... a prudence review process for already incurred and to-be-incurred preconstruction and construction costs [and] a rate mechanism .... [Ajpproval of each and every one of these measures is necessary.” By stipulation, the Commission improperly deferred prudency hearings, which are a prerequisite to granting an increase in rates. See Miss.Code Ann. §§ 77-3-105(l)(a) and (l)(b).[7] By not conducting prudency hear *912 ings, the Commission ignored the dictates of the Act and thus acted arbitrarily without lawful authority.
¶ 15. One component of the Act is to allow utility companies to collect prudently incurred preconstruction costs, construction costs, and finance costs as incurred to reduce the finance costs, which are capitalized in the utility’s allowance for funds used during construction (“AFUDC”) upon commercial operation. “AFUDC .represents interest on borrowed funds, dividends on preferred stock, and the imputed return on common stock.” Miss. Pub. Serv. Comm’n v. Miss. Power Co., 429 So.2d 883, 897 n. 7 (Miss.1983). The Act contemplates increasing rates to pay AFUDC as incurred, which, if done, would mitigate the effect of compounding interest.[8] However, this appeal concerns “mirror CWIP,”[9] resulting in MPC charging increased rates. But the ratepayers’ property (money) is placed into a regulatory liability account controlled by the Commission. Thus, the money exacted is not being used to pay for funds used during construction as expenses are incurred. The ratepayers’ property (money) is being confiscated[10] through governmental decree, by a rate increase imposed by a privately owned corporation that cannot spend it. There is no authorization to impose “mirror CWIP” in the statute.
¶ 16. The Commission has exhibited a pattern of conduct throughout these proceedings that exceeds its authority. The Commission’s tasks remain undone and its duties unfulfilled. The Commission does not have unbridled authority to adopt recovery mechanisms which are not authorized by existing law. While the Act permits the Commission to include CWIP in the utility’s rate base and rates, the Act did not authorize the Commission to adopt an entirely new mechanism, i.e., “mirror CWIP” (a concept not previously recognized in Mississippi rate-making practices). An affirmance of the Commission’s order can only perpetuate these transgressions.
¶ 17. Absent compliance with the Act, no legal authority existed to increase the rates. See Miss.Code Ann. § 77-3-105(l)(a) (Rev.2009). Ratepayers should not be bound by decisions made by the Commission which do not comport with the laws of our State. This Court will not condone the forced payments for rate increases not authorized by the Act or existing law. On remand, the Commission is hereby instructed to (1) fix by order the. rates in existence prior to its order of March 5, 2013; (2) fix no rate increases until the Commission is in compliance with this Court’s opinion; and (3) enter an order refunding the monies attributable to the rate increases allowed by the March 5, 2013, Order. The Commission is further instructed to meet its obligations as set forth in the Act regarding all future proceedings. The decision of this Court does not foreclose MPC from seeking recovery of its financing costs through a rate in *913 crease, as long as the laws of our state are adhered to by the Commission. At the same time, as the Commission states in its briefs, the Act does not provide MPC an “entitlement” to CWIP recovery. If MPC never recovers CWIP, it still may seek to recover construction financing costs included in MPC’s AFUDC accounts, as traditionally has been done.

C. Due Process

¶ 18. Blanton argues that the assessments (increased rates) ordered by the Commission constitute confiscatory takings which violate his and others’ due-process rights. Blanton argues that the Commission’s actions violate the Due Process Clause of the United States and Mississippi Constitutions.[11] In a specially concurring opinion, Justice Hawkins once eloquently penned:
Due process has been addressed by courts in so many different ways and defined in so many situations, it would take a lifetime just to read the cases. There is nothing mysterious about the term, however. To most of us its central meaning simply is even handed fairness in legal proceedings.
[[Image here]]
Not only every lawyer, but most citizens are aware that no court can, under our Constitutions, take away property or valuable rights from any person without giving him fair notice and an opportunity to be heard.
Mississippi Power Co. v. Goudy, 459 So.2d 257, 270-71 (Miss.1984) (Hawkins, J., specially concurring).

1. Commission’s Noncompliancé with the Act

¶ 19. While this Court understands that the ratepayers have no property interest in a certain rate, the ratepayers may not be “subject to proceedings in which he or she may be deprived of a protected property interest without adequate protection in place to certify the fundamental fairness of the action taken by the government (in this case, the Public Service Commission).” See Brief of Appellee/Cross-Appellant, at p. 26. In Memphis Light, Gas & Water Division v. Craft, 436 U.S. 1, 98 S.Ct. 1554, 56 L.Ed.2d 30 (1978), the Supreme Court held that:
[a]n elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.
Craft, 436 U.S. at 13, 98 S.Ct. at 1562 (emphasis added) (quoting Mullane v. Central Hanover & Trust Co., 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950)). See also City of Tupelo v. Miss. Emp’t Sec. Comm’n, 748 So.2d 151, 153 (Miss.1999).
¶ 20. Blanton argues that “mirror CWIP” facilitates a confiscatory taking of property, violating his and all ratepayers’ substantive due-process rights. By approving increased rates based on “mirror CWIP” recovery, the Commission has deprived the ratepayers of their property, i.e., money.[12] As previously stated, *914 the increased rates are not being used to pay for funds during construction as provided by the Act. There is no question that the taking of private funds is a transfer of the property and results in the deprivation of that property.
¶ 21. Ab initio, the Commission deprived ratepayers of procedural due process by failing to require notice to the ratepayers.[13] No notice of the original filing was provided to the ratepayers in the overwhelming majority of the southeastern Mississippi counties constituting MPC’s service area.[14] MPC sought and obtained approval for CWIP recovery that would result in rate increases. When MPC pursued rate increases as part of its certifícate filing, all of its customers were entitled to notice. Few, if any, received it. The ratepayers are “interested parties” in this proceeding. We read these statutes, rules, and regulations to require that the Commission, on remand, is to order that notice be provided to all ratepayers regarding all future proceedings related to rate base, rates, rate of return, and prudency hearings.
¶ 22. Blanton raises his objections, not only for himself, but also for the unnoticed ratepayers. No argument has been advanced that all ratepayers participated in every stage of these proceedings, because it simply is not true. Notice was not properly given. The construction and operation of this multibillion-dollar electric generation facility was going to increase rates. Any suggestion to the contrary is facetious and wholly untenable.[15] Ratepayers first received notice of MPC’s intent to increase rates after entry of the April 24, 2012, Order, when an increase in rates was a fait accompli. “[A]s a practical matter,” ratepayers should have been provided notice in the initial proceedings in order to protect their “substantial interest ... [in the] outcome of the proceeding,” and if a ratepayer, after receiving such notice, desired to protect his/her interests, *915 the ratepayer could do so by intervening in the proceedings. See Public Utilities Rules of Practice and Procedure 6.121. Yet ratepayers were not afforded procedural due process via notice.
¶ 23. MPC not only sought rate increases but separately requested that the long-range rate-impact information furnished to the Commission be kept confidential, a direct violation of Section 77-3-37, which requires that information regarding changes in rates be “kept open to public inspection.” Miss.Code Ann. § 77-3-37(1) (Rev.2009). The Commission improperly determined rate-impact information to be confidential, concealing from the ratepayers the amount of the projected increases. The Commission improperly sealed information to which the public was entitled.[16] The Commission and MPC claim that, since a specific rate increase was not requested in the initial petition, it was proper to seal that information. That argument must fail, because the public has a right to know when and how much its rates will be increased at all stages of a proceeding. The Commission’s decision to govern in a cloak of secrecy and grant confidentiality to rate-impact information was arbitrary and capricious.

2. Settlement Agreement

¶ 24. On January 25, 2013, MPC and the Commission filed a Joint Motion to Dismiss with Prejudice,[17] arguing that the two parties “resolv[ed] all disputed issues” in MPC’s direct appeal.[18] MPC and the Commission attached a copy of a Settlement Agreement, which was ironed out in private meetings, to the joint motion. In the Settlement Agreement, the Commission acknowledged that “MPC [was denied] the recovery of CWIP financing costs to date as well as any prudence review of such costs and [MPC] is unable to retroactively recover these costs under law,” but agreed to consider a new petition for rate increases based on “mirror CWIP,” a concept not previously disclosed in the proceedings. In return, MPC agreed to dismiss its appeal of the “contested proceeding” pending before this Court.[19] Both agreed that each would be allowed to opt out of this agreement if it is determined that “the Commission lacks the legal authority to implement a multi-year rate mitigation plan and/or an alternate financing plan to the extent and in a manner contemplated by this Settlement Agreement” or if any “order related to the Kemper Project previously issued or contemplated under this Settlement Agreement is subsequently reversed by an appellate court during the term of this Settlement Agreement.” Additionally, the Commission and MPC stipulated that the Commission would
*916 make every effort to consider the prudence of all Kemper Project costs incurred as of December 31, 2012 in connection with the 2013 CWIP rate proceeding provided for in subsection (a) above, but in any event shall make a prudence determination concerning these costs within six (6) months of executing this Settlement Agreement. ...
¶ 25. The Agreement also provided that the customers (ratepayers), who ultimately bear the majority of the risks of the project, would be credited with ten percent of any royalties derived from the sale of “TRIG tm technology in the commercial electric power generation market,” although the Agreement fails to explain the allocation of the remaining ninety percent. The Settlement Agreement was the first public disclosure of that separate agreement.
¶ 26. No authority exists for the Commission to conduct public business in private. Pursuant to Section 77-2-13(4)(a), the Commission is forbidden from all ex parte communication regarding a “contested proceeding.” The argument that the case was on appeal is without merit. The private meetings clearly violate the statutes governing the Commission. The public has a right to see and hear its business being conducted. The rate increase resulting from the private agreement to dismiss MPC’s appeal and facilitate a refiling resulted in the increases being contested today. Because the Commission lacked authority to enter into a private settlement agreement, the agreement is unenforceable.

TV. CONCLUSION

¶ 27. An analysis of these proceedings leads to the inescapable conviction that the Commission failed to fulfill its duties and obligations pursuant to statutory directives and our existing law and that the overwhelming majority of 186,000 ratepayers was not accorded due process from the beginning. As such, the Commission did not balance the ratepayers’ interests with those of the utility, as our law requires. Miss. Pub. Serv. Comm’n v. Miss. Power Co., 429 So.2d 883, 887 (Miss.1983). An affirmation of the Commission’s actions would constitute a grave injustice. U.S. Const. amend. V, XIV; Miss. Const. art. 3, § 14; Goldberg v. Kelly, 397 U.S. 254, 267-68, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970) (The “fundamental requisite of due process ... is the opportunity to be heard.”) Government’s powers must be exercised in satisfaction of due process, including adequate notice and the opportunity to be heard. See Webb v. Town Creek Master Water Mgmt. Dist., 903 So.2d 701, 707 (Miss.2005). See also Armstrong v. Manzo, 380 U.S. 545, 552, 85 S.Ct. 1187, 14 L.Ed.2d 62 (1965); Grannis v. Ordean, 234 U.S. 385, 394, 34 S.Ct. 779, 58 L.Ed. 1363 (1914) (parties denied “ ‘the opportunity to be heard[ ]’ ... at a meaningful time and in a meaningful manner”). Therefore, we reverse the March 5, 2013, Order granting the rate increases and order the Commission to enter an order confestim directing that the funds be refunded to the ratepayers. The Commission is instructed further to provide notice to the ratepayers in future proceedings related to rate base, rates, rate of return, and prudency hearings. We otherwise remand this case to the Commission for proceedings consistent with this opinion.
¶ 28. REVERSED AND REMANDED.
LAMAR, KITCHENS, PIERCE AND KING, JJ., CONCUR. PIERCE, J., SPECIALLY CONCURS WITH SEPARATE WRITTEN OPINION JOINED BY RANDOLPH, P.J., LAMAR, *917 KITCHENS AND KING, JJ. DICKINSON, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY WALLER, C.J., CHANDLER AND COLEMAN, JJ.

. Miss.Code Ann. §§ 77-3-101 to 77-3-109 (Rev.2009).

. "The Commission notes that the annual revenue adjustment will not be collected in full; that is, an annual rate designed to collect $125 million will actual collect $99 million from April-December 2013. The Commission also points out that the Commission, this day, has approved a rate reduction of approximately 2.7% relating to MPC's non-Kemper business, which will reduce the impact to ratepayers related to the CWIP collection.” Commission’s Final Order, p. 24 (Mar. 5, 2013).

. To put the expanse of the project in context, the projected cost is greater than the entire budget for the State of Mississippi for both the 2014 fiscal year ($5,772,010,253) and the 2015 fiscal year ($6,073,368,771). As of the date of this opinion, the portion of the plant which uses integrated gasification combined cycle (IGCC) is not online.

. As referenced in MPC’s briefs, MPC was seeking to recover financing costs “as they are incurred instead of compounding those costs until the plant is complete.”

. Blanton also argued that CWIP is a pledge in violation of Article 14, Section 258 of the Mississippi Constitution, which we decline to address.

. In its May 26, 2010, Order, the Commission specifically authorized “one hundred percent (100%) of all construction costs (subject to prudence reviews as provided herein)” to be recovered for 2012, 2013, and 2014. Commission's Order, p. 17 (May 26, 2010) (emphasis added). Additionally, on April 24, 2012, the Commission issued its Final Order on Remand Granting a Certificate of Public Convenience and Necessity, Authorizing Application of Baseload Act, and Approving Prudent Pre-Construction Costs. (Emphasis added.)

. By stipulation, MPC "agreed to defer a prudence review until a later date. Consistent with the stipulation, this Commission hereby declines to address the prudence of the Kem-per Project costs in this proceeding, but this decision shall not disclose MPC from requesting a prudence review at a later time or this Commission conducting prudence reviews, sue sponte.” Commission's Final Order, p. 25 (Mar. 5, 2013) (emphasis added and in original). Certainly, the Commission intended to state that the decision would not "foreclose” MPC from requesting reviews, not that such prudence hearings would not be "disclosed”. The Commission further ordered that “noth *912 ing contained in this Order shall be construed as a finding of prudence of any of the Kemper Project costs, which shall be subject to a separate prudence review as subsequently determined by this Commission.” Id. at 26.

.MPC maintained in its original brief that it was seeking to recover costs during construction to avoid compounding those costs upon completion of the plant.

. "Mirror CWIP” provides that the "funds collected during the construction period ... be recorded to a regulatory liability account and held for the sole benefit of customers for the purpose of partially or fully offsetting future rate increases that would otherwise occur after commercial operation.” Commission's Final Order, p. 10 (Mar. 5, 2013).

. Confiscatory taking is discussed further in Section IV(C)(1).

. The Constitution of the State of Mississippi states ‘‘[n]o person shall be deprived of life, liberty, or property except by due process of law.” Miss. Const, art. 3, § 14. The Fifth Amendment to the United States Constitution states that "[n]o person shall be ... deprived of life, liberty, or property, without due process of law-” U.S. Const. Amend. V.

. Even though the Commission's Order provides for a return of the ratepayers’ money if the plant does not go into operation, it is no less a deprivation of property. It is well-settled that "a temporary, nonfinal deprivation of property is nonetheless a ‘deprivation’ in the terms of the Fourteenth Amendment.” Fuentes v. Shevin, 407 U.S. 67, 84-85, 92 *914 S.Ct. 1983, 1996, 32 L.Ed.2d 556 (1972) (citing Bell v. Burson, 402 U.S. 535, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971); Sniadach v. Family Fin. Corp., 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969)).

.Section 77-3-13, related to certificates of need, reads in pertinent part that, "the Commission shall set the matter for hearing and shall give reasonable notice of the hearing thereon to all interested persons, as in its judgment may be necessary under its rules and regulations....” Miss.Code Ann. § 77-3-13(3) (emphasis added). In regard to changes in rates, Section 77-3-37 provides that "[n]o public utility shall make any change in any rate which has been duly established under this chapter, except as provided in this chapter.” Additionally, "[t]he Commission may promulgate rules and regulations providing for notice to customers of the filing by any public utility for a rate increase....” Miss.Code Ann. § 77-3-37(1) (emphasis added). Any changes to rates are to be "kept open to public inspection” and "clearly indicate the rates to be changed and the rates proposed.” Id. More specifically, "major changes in rates and schedules ... shall provide, ... notice of such proposed change within each affected customer’s bill or invoice and in a newspaper having general circulation in the area where service is being provided by the public utility.” Miss.Code Ann. § 77-3-37(9) (emphasis added).

. Notice was published in the Jackson Clarion-Ledger, Kemper County Messenger, Meridian Star, Clark County Tribune, and Jasper County News. Direct notice was not provided to a single customer in any of the twenty-three counties served.

. Unlike some cases where speculation would be required as to the effect various events might have on a utility's rates, here we already know rates were increased eighteen percent in response to MPC’s petition to recover only financing costs, a small fraction of the total cost of the project. Once the plant goes into full operation, MPC will attempt to maximize the costs attributed to the project to be capitalized and will seek further rate increases.

.In his concurring-in-part and dissenting-in-part opinion, Commissioner Presley criticized the Commission's decision to keep rate-impact filings confidential. He stated:
The Company's proposal and filings in this case keep confidential and out of the public’s view the possible rate impacts associated with the project. Although current Commission rules allow for this practice, the majority should have made public disclosure of the rate impact a condition that must be met by the Company to make the application consistent with the public interest. MPC ratepayers have a right to know what they will he faced with paying for such an essential service as electricity should the Company go forward with the project. This is basic information that MPC ratepayers have a right to know.

. This Court granted MPC's and the Commission's joint motion on February 14, 2013.

. MPC and the Commission also filed a joint motion, requesting that Blanton’s cross-appeal be dismissed. However, this Court denied this motion and additionally ordered supplemental briefing as to Blanton’s claims.

. MPC appealed the Commission’s earlier denial of an increased rate based on CWIP.