# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2016-IA-00442-SCT

*MISSISSIPPI STATE REPRESENTATIVE HOUSE SPEAKER, PHILIP A. GUNN*

*v.*

*REPRESENTATIVE J. P. HUGHES, JR.*

| | |
|---|---|
| DATE OF JUDGMENT: | 03/23/2016 |
| TRIAL JUDGE: | HON. WINSTON L. KIDD |
| TRIAL COURT ATTORNEYS: | MICHAEL B. WALLACE |
| | REBECCA L. HAWKINS |
| | CHARLES EDWARD COWAN |
| | SIDNEY RAY HILL, III |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | MICHAEL B. WALLACE |
| | REBECCA L. HAWKINS |
| | CHARLES EDWARD COWAN |
| ATTORNEY FOR APPELLEE: | SIDNEY RAY HILL, III |
| NATURE OF THE CASE: | CIVIL - OTHER |
| DISPOSITION: | REVERSED AND REMANDED - 02/09/2017 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**DICKINSON, PRESIDING JUSTICE, FOR THE COURT:**

¶1. This case tests the limits of our judicial power to review the manner in which the Legislature carries out its procedural constitutional responsibilities. Article 4, Section 59 of the Mississippi Constitution provides that in the Mississippi Legislature "every bill shall be read in full immediately before the vote on its final passage upon the demand of any member." When J. P. Hughes Jr., a member of the Legislature, requested that certain bills be read as required by that article, Speaker Phlip Gunn had the bills read by a machine at a

speed that Rep. Hughes claims was incomprehensible and therefore a constitutional violation, leading him to file suit to stop the practice. We granted interlocutory appeal and now hold that we are without constitutional authority to resolve this dispute. We remand this case to the circuit court with instructions to dismiss the petition.

## FACTS AND PROCEDURAL HISTORY

¶2. On March 23, 2016, Rep. Hughes filed a petition against Speaker Gunn in the circuit court, seeking a temporary restraining order, a preliminary injunction, and, alternatively, a writ of mandamus. Rep. Hughes's petition asked the circuit judge to order the Speaker's compliance—by injunction or writ of mandamus—with Article 4, Section 59 of the Mississippi Constitution, which states "every bill shall be read in full immediately before the vote on its final passage upon the demand of any member." In his petition, Rep. Hughes acknowledges that Speaker Gunn had recognized members' requests to have bills read under Article 4, Section 59, but in doing so, he had

> only partially obliged that request by having the words of the bills read by an electronic device (set on the highest speed adjustment, #10) such that the same is being read artificially and so quickly that no human ear nor mind can comprehend the words of the bills.

¶3. After finding that the circuit court had jurisdiction to resolve the dispute, a Hinds County circuit judge granted a temporary restraining order which stated that

> the Respondent shall, consistent with Article 59 of the Mississippi Constitution, read or cause to be read all bills presented to the House of Representatives in a normal speed and audible level comprehensive lever [sic] so that each member of the House of Representatives has an opportunity to hear and understand each word of each such properly requested reading.

2

¶4. The order also set a hearing for March 28, 2016, but the next day, the Speaker moved to dissolve the temporary restraining order, arguing that he had complied with Article 5, Section 59; that Rep. Hughes had failed to satisfy several requirements to obtain a temporary restraining order *ex parte*; and that judicial intervention into the legislative matter was inappropriate.

¶5. That same day, the Speaker filed in this Court a petition for interlocutory appeal, or for writ of mandamus or prohibition from the circuit court's temporary restraining order, arguing that Rep. Hughes had failed to satisfy the requirements to obtain an *ex parte* temporary restraining order, and that this Court should order the circuit court "to restrain the exercise of its supposed jurisdiction in contravention of the separation of powers doctrine embodied in Miss. Const. Art. 1 §§ 1-2 (1890)."

¶6. On March 24, 2016, we dissolved the temporary restraining order and stayed all proceedings in the circuit court, and we ordered Rep. Hughes to respond to the Speaker's petition for interlocutory appeal, which he did. We then granted interlocutory appeal to "address (1) whether the judiciary has jurisdiction over this dispute in light of Sections 1 and 2, Article I of the Mississippi Constitution, and/or (2) whether this Court should refrain from exercising its jurisdiction over the issues raised in this matter."

## ANALYSIS

¶7. The Mississippi Constitution's first section states that "[t]he powers of the government of the State of Mississippi shall be divided into three distinct departments, and

each of them confided to a separate magistracy, to-wit: those which are legislative to one, those which are judicial to another, and those which are executive to another."[1]  Its second section states that "[n]o person or collection of persons, being one or belonging to one of these departments, shall exercise any power properly belonging to either of the others."[2]  The jurisdictional question presented is whether judicial intervention in this dispute would be an encroachment on a power conferred upon the Legislature in violation of Article 1, Section 2.

¶8.      Rep. Hughes claims the Speaker has failed to comply with the requirements of Article 4, Section 59 of the Mississippi Constitution.  He asks the judiciary to order the Speaker's compliance through injunctive relief.  But we hold that this Court lacks constitutional authority to interfere in the procedural workings of the Legislature, even when those procedures are constitutionally mandated.  This limitation on our power has been recognized by this Court for more than a century.[3]

¶9.      In *Hunt v. Wright*, we recognized that our power to review statutes for constitutional infirmity "commences after the termination of legislative action."[4]  In doing so, the *Hunt* Court made clear that the judiciary is "not an overseer of the legislature during its labors, but

---

[1] Miss. Const. art. 1, § 1.

[2] Miss. Const. art. 1, § 2.

[3] *Ex parte Wren*, 63 Miss. 512, 533–34 (1886);  *Hunt v. Wright*, 70 Miss. 298, 11 So. 608, 610 (1892).

[4] *Hunt*, 11 So. at 610.

[this Court] takes its completed work, and tries it by the constitution, starting with the conclusive and irrebuttable presumption that as to all the requirements of that instrument they who swore to observe it did it."[5]

¶10.    While this case concerns a request for injunctive relief to order the Speaker to carry out a constitutional procedural requirement, not a request to invalidate a statute for some constitutional procedural defect in its enactment, *Hunt* recognizes that the Legislature possesses exclusive power over its own procedures.

¶11.    The *Hunt* decision relied on this Court's opinion in *Ex parte Wren*—decided before the adoption of our present Constitution—which unequivocally held that the judiciary lacks any constitutional authority to interfere in the Legislature's internal procedure:

> The legislature is one of the three co-ordinate and co-equal departments into which the powers of government are divided by the constitution, *possessing all legislative power and not subject to supervision and control during its performance of its constitutional functions*, nor to judicial revision afterward of the manner in which it obeyed the constitution its members are sworn to support.[6]

¶12.    But in *Tuck v. Blackmon*—a more recent opinion that has muddied the constitutional water surrounding Article 4, Section 59—several Mississippi senators sought injunctive relief to enforce that provision.[7]  Lieutenant Governor Amy Tuck, acting in her capacity as President of the Senate, had determined that Article 4, Section 59's requirement that bills be

---

[5] *Id.*

[6] *Ex parte Wren*, 63 Miss. at 533–34 (emphasis added).

[7] *Tuck v. Blackmon*, 798 So. 2d 402, 404 (Miss. 2001).

5

read upon request did not apply to conference committee reports.[8]  The senators who had requested a reading sought judicial review and injunctive relief on the question of whether a conference committee report constituted a bill for purposes of Article 4, Section 59.[9]

¶13.    After a chancellor granted the senators an injunction, Lt. Gov. Tuck appealed, and this Court failed to apply the strict separation of powers required by the Mississippi Constitution, as recognized in *Hunt* and *Wren*.[10]  The Tuck *Court* stated:

> With respect to the separate powers of each branch of government, the courts will *generally refrain* from interfering with the Legislature's interpretation and application of its procedural rules and with its internal operations.[11]

By saying we "generally refrain from interfering," this Court committed error born of two sources.

¶14.    First, the *Tuck* Court purported to apply this Court's decision in *Dye v. State ex rel. Hale*, which considered a constitutional challenge on separation-of-powers grounds by several Mississippi senators to Senate rules granting the Lieutenant Governor—an executive officer—control over legislative matters.[12]  But *Dye* addressed a different issue: this Court's authority to enforce the Mississippi Constitution's substantive separation of powers.

---

[8] *Id.*

[9] *Id.* at 405.

[10] *Id.*

[11] *Id.* (emphasis added).

[12] *Dye v. State ex rel. Hale*, 507 So. 2d 332, 334–35 (Miss. 1987).

6

¶15.    Second, the ***Tuck*** Court characterized the constitutional limits on this Court's power as a matter of discretion left to the whims of this Court.  In other words, this Court found that, although it had jurisdiction to review the constitutionality of the Legislature's internal actions, it should not—as a matter of judicial restraint—exercise that jurisdiction unless the challenged conduct was manifestly unconstitutional.[13]  The Court described this as the "well precedented and respected political question doctrine itself grounded in prudent judicial restraint."[14]

¶16.    But while ***Tuck*** correctly identified that the political question doctrine was at issue, it incorrectly described that doctrine as one of discretionary judicial restraint.  The political question doctrine embodies the constitutional separation of powers between coequal branches of government,[15] setting the limit of the judiciary's constitutional authority to resolve disputes when there arises either "'a textually demonstrable constitutional commitment of the issue to a coordinate branch political department; or a lack of judicially discoverable and manageable standards for resolving it.'"[16]  The ***Tuck*** Court's holding to the contrary was erroneous.  At least to the extent that the political question doctrine turns on "'a textually demonstrable constitutional commitment of the issue to a coordinate branch political

---

[13] ***Tuck***, 798 So. 2d at 406.

[14] ***Id.*** at 407.

[15] ***Powell v. McCormick***, 395 U.S. 486, 512, 89 S. Ct. 1944, 23 L. Ed. 2d 491 (1969).

[16] ***Nixon v. U.S.***, 506 U.S. 224, 228, 113 S. Ct. 732, 122 L. Ed. 2d 1 (1993) (quoting ***Baker v. Carr***, 369 U.S. 186, 217, 82 S. Ct. 691, 7 L. Ed. 2d 663 (1962)).

7

department" it cannot be considered a matter of discretion given the Mississippi Constitution's absolute separation of powers.[17]

¶17.    In sum, when the **Tuck** Court employed language suggesting the judiciary would refrain from exercising its power to interfere in legislative procedure, it necessarily implied it had that power in the first place.  This ran afoul of **Wren**, **Hunt**, and the Mississippi Constitution's absolute separation of powers.  So to be clear, to the extent **Tuck** held that the judiciary possesses some power to interfere in the Legislature's internal procedure, we overrule it today.

¶18.    By requesting the courts to force Speaker Gunn to read bills in a particular manner, Rep. Hughes seeks to involve the judiciary in legislative procedural matters.  The text of our state Constitution that imposes upon the Legislature the obligation to read bills upon a member's request, necessarily commits upon the Legislature the obligation to determine how

---

[17] In this sense, this case is on all fours with the United States Supreme Court's decision in **Nixon v. United States**.  In **Nixon**, the United States House of Representatives brought articles of impeachment against Walter L. Nixon, Jr.—Chief Judge of the United States District Court for the Southern District of Mississippi—after Judge Nixon had been convicted of making false statements to a federal grand jury.  When the House presented the articles to the United States Senate, the Senate invoked a procedural rule by which a committee of Senators reviewed the evidence supporting impeachment, and then the whole Senate reviewed a report on that evidence before voting to remove Nixon from office.  Nixon sought judicial review, arguing that because the United States Constitution states that the Senate shall try all cases of impeachment, the Senate could not adopt a rule delegating that duty to a committee.  Rather, he argued, the entire Senate must hear the evidence supporting impeachment.  When the case reached the United States Supreme Court, that court considered whether Nixon's constitutional claim implicated the political question doctrine. The Supreme Court concluded that the power to try impeachments had been committed to the Senate, not the judiciary.  **Nixon**, 506 U.S. at 226–237.

8

that requirement will be carried out. So this case must be dismissed, not as a matter of judicial discretion, but because we are without constitutional authority to adjudicate it. The constitutional authority, and duty, to decide the matter lies squarely within the legislative branch of our government.

## CONCLUSION

¶19. Because Rep. Hughes's petition raises an issue the judiciary lacks constitutional authority to adjudicate, we remand this case to the circuit court with instructions to dismiss it.

¶20. **REVERSED AND REMANDED.**

**WALLER, C.J., COLEMAN, MAXWELL AND BEAM, JJ., CONCUR. RANDOLPH, P.J., CONCURS IN RESULT ONLY WITH SEPARATE WRITTEN OPINION JOINED IN PART BY BEAM, J. KING, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY KITCHENS, J. CHAMBERLIN, J., NOT PARTICIPATING.**

**RANDOLPH, PRESIDING JUSTICE, CONCURRING IN RESULT ONLY:**

¶21. My esteemed colleagues engage in verbal sparring on an issue which does not demand our attention. "[I]t is well-settled that 'a constitutional question will be passed on where the issues involved in a particular case are such that the case may be decided on other grounds.'" *Miss. Power Co., Inc. v. Miss. Pub. Serv. Comm'n*, 168 So. 3d 905, 910 (Miss. 2015) (quoting *Warner–Lambert Co. v. Potts*, 909 So. 2d 1092, 1093 (Miss. 2005)). Without delving into an extended study and resulting discourse concerning the Constitution and the

9

separation of powers, can we not agree that this Court has jurisdiction to review a circuit court's order?

¶22.    Rep. J. P. Hughes filed a petition in Hinds County Circuit Court seeking a temporary restraining order (TRO) without ever noticing Speaker Philip Gunn. The grant of a TRO without notice is governed by Rule 65(b) of the Mississippi Rules of Civil Procedure.

> A temporary restraining order may be granted, without notice to the adverse party or his attorney if (1) it clearly appears from specific facts shown by affidavit or by the verified complaint that immediate and irreparable injury, loss, or damage will result to the applicant before the adverse party or his attorney can be heard in opposition, and (2) the applicant's attorney certifies to the court in writing the efforts, if any, which have been made to give the notice and reasons supporting his claim that notice should not be required. Every temporary restraining order granted without notice shall be endorsed with the date and hour of issuance; shall be filed forthwith in the clerk's office and entered of record; shall define the injury and state why it is irreparable and why the order was granted without notice; and shall expire by its terms within such time after entry, not to exceed ten days . . . .

M.R.C.P. 65(b).

¶23.    While Rep. Hughes's petition is notarized and sworn to, he filed neither a complaint nor an affidavit. Although he alleges "irreparable harm," he fails to specify any physical or psychological injury that he has suffered—or would suffer—or how the undescribed injury would be irreparable. He does not aver that he or any other member of the House was unable to read, did not have access to the full text of any bill, was uninformed regarding the text of any bill, or that he was unable to understand the text, substance, or import of any bill.[18] In

---

[18]Although Rep. Hughes alleges that the bills were being read at an "unintelligible speed," he does not dispute the affidavit of the Clerk of the House of Representatives, who

short, Hughes failed to show the urgency and necessity which precipitates a need for a TRO.

Equally fatal to Rep. Hughes's petition is his failure to certify his efforts to provide notice to Speaker Gunn and the reasons why notice should not be required. The petition is totally devoid of any efforts to provide notice and/or reasons why notice should not be required.

¶24. The TRO issued is similarly fatally defective. The order fails to decree (1) why the undescribed, undefined "injury" is irreparable and (2) why the trial court granted the order without notice.

¶25. The TRO was dissolved by an en banc order of this Court, which also stayed all proceedings in the circuit court until further ordered by this Court. Due to the procedural deficiencies of both the petition and the TRO, the TRO issued in this case is void. Speaker Gunn was wrongfully restrained. Thus, I agree with remanding this matter to the circuit court. However, I would include an instruction to the circuit judge to conduct a hearing to determine the reasonable costs, expenses, and attorney's fees incurred by the Speaker, as

---

swears that

> [a]t the beginning of the term every Member of the House, by taxpayer expense, is offered either a laptop computer or an iPad for purposes of access to the Internet. This technology is offered to give legislators a platform to research legislation, to read bills, and to do official work of the House. Every Member of the House accepted and received either a laptop computer or an iPad, except for the Speaker and Speaker Pro Tempore. The current text of every bill is available online at all times. All Members therefore have immediate access to the text of every bill as it is being read in the House. In addition to a laptop or iPad, legislators are offered hard copies of bills in committee and can obtain a hard copy of a bill, by request, on the House floor.

11

provided by Rule 65(c).[19] The citizens of this State should not be saddled with the costs of this litigation.

**BEAM, J., JOINS THIS OPINION IN PART.**

**KING, JUSTICE, DISSENTING:**

¶26. Because I believe that an appellate decision in this case is premature, and consequently should remand the case to the circuit court to be properly developed, I respectfully dissent.

¶27. I would allow this matter to proceed in the circuit court, where a full record could be developed. *See* M.R.A.P. 10(a) (the content of the appellate record "shall consist of designated papers and exhibits filed in the trial court, the transcript of proceedings, if any, and . . . a certified copy of the docket entries . . ."); *Hardy v. Brock*, 826 So. 2d 71, 76 (Miss. 2002) ("Mississippi appellate courts may not consider information that is outside the record.").

---

[19]*See* M.R.C.P. 65(c) (requiring a TRO applicant to post security "in such sum as the court deems proper, for the payment of such costs, damages, and reasonable attorney's fees as may be incurred or suffered by any party who is found to have been wrongfully enjoined or restrained").

¶28.    The majority decides this case without proper development in the circuit court.[20]  In order for the majority to find insufficient grounds to justify judicial intervention, it must determine whether the actions at issue were manifestly unconstitutional.    Such a determination depends partially on the facts of the case, which were completely undeveloped in the circuit court.  For example, Rep. Hughes has not had the opportunity to provide evidence that members of the House may be uninformed as to the text of the bills, or that the machine's speed caused confusion or misunderstanding of the bills.  Pleadings must only contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Miss. R. Civ. P. 8(a)(1).  At the pleading stage, a party is required only to place the defendant or respondent "on reasonable notice of the claims against" him and "to demonstrate that [the plaintiff or petitioner] has alleged a recognized cause of action upon which, under *some set of facts*, he might prevail."  ***Children's Med. Grp., P.A. v. Phillips***, 940 So. 2d 931, 934 (Miss. 2006).  Thus, Rep. Hughes was not required to allege or prove specific facts.  It was thus not necessary at this juncture that Rep. Hughes conduct extensive investigations and discovery in order to determine whether or how many House of Representative members encountered problems due to the alleged incoherent reading of the

---

[20]To be clear, I agree, as evinced by the Corrected En Banc Order in this case filed on March 24, 2016, that the pleadings were insufficient under Rule 65 to grant a Temporary Restraining Order (TRO).  The pleadings failed to meet the heightened pleading standards required by Rule 65 to obtain a TRO.  But once the stages of the litigation go beyond Rule 65 and a TRO, what we are dealing with are general pleading issues, in other words, simple notice pleading.  Thus, I clarify that we are no longer examining the pleadings under Rule 65, but examining them as sufficient under notice pleading standards.

13

bills. He needed only to make allegations sufficient to put Speaker Gunn on reasonable notice of his claims, which he has done. As such, the record should be developed in the circuit court, so that Rep. Hughes may be afforded the opportunity to gather evidence that the machine reading the bills resulted in problems for any representatives and/or was unconstitutional for any number of reasons, and for Speaker Gunn to be afforded the opportunity to gather evidence that it did and was not.

¶29. Moreover, Rep. Hughes clearly alleged critical harm[21] in his petition, stating in that petition that "[b]y failing to follow the letter and spirit of the Mississippi Constitution and having the bills read aloud for the body in a manner so they can be understood, there is irreparable harm which has occurred and will continue to occur, all as a direct and proximate result of the actions and inactions of" Speaker Gunn. But such was impossible for him to prove because this Court denied him the opportunity to develop his case in the circuit court.

¶30. Moreover, the circuit court was not only prevented from developing the facts in this case, it was not allowed to issue any sort of final judgment applying the law from which we can find error. It is the role of the judiciary to apply the law to the facts of a particular case; this Court does not issue advisory opinions and in cases such as this, the trial court is the trier of fact and the original court assigned to apply the law to the facts. *See Ramsey v. Auburn Univ.*, 191 So. 3d 102, 112 (Miss. 2016) (where circuit court did not address certain issues

---

[21]Under *Tuck*, the court may examine legislative action where it exercises its constitutional responsibilities in a manifestly wrong manner that does critical harm to the legislative process. Maj. Op. ¶15.

and the appellant essentially asked this Court to preemptively resolve those issues, this Court noted that it does not issue advisory opinions).

¶31.    Because this Court decides these issues preemptively and prematurely, without affording the parties the opportunity to develop the facts, and without allowing the circuit court to apply the law to those developed facts, I respectfully dissent. I would remand the case for further proceedings in the circuit court.

**KITCHENS, J., JOINS THIS OPINION.**