# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2015-CA-01645-SCT

*TUNICA COUNTY BOARD OF SUPERVISORS*

*v.*

*HWCC-TUNICA, LLC*

| | |
|---|---|
| DATE OF JUDGMENT: | 10/13/2015 |
| TRIAL JUDGE: | HON. CHARLES E. WEBSTER |
| TRIAL COURT ATTORNEYS: | ALFRED THOMAS TUCKER, III |
| | W. ELLIS PITTMAN |
| | MELVIN DAVID MILLER, II |
| COURT FROM WHICH APPEALED: | TUNICA COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | JULIAN DENNARD MILLER |
| | MELVIN DAVID MILLER, II |
| ATTORNEY FOR APPELLEE: | ALFRED THOMAS TUCKER, III |
| NATURE OF THE CASE: | CIVIL - OTHER |
| DISPOSITION: | AFFIRMED - 12/14/2017 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**KITCHENS, PRESIDING JUSTICE, FOR THE COURT:**

¶1.     The Board of Supervisors of Tunica County, Mississippi (the Board), ordered an *ad valorem* tax levy for fiscal year 2014-15 and increased the millage rate from the previous year. After entering the order, the Board advertised a public hearing of the proposed *ad valorem* tax levy in the Tunica *Times*. The hearing took place and various taxpayers appeared to voice objections and concerns. Aggrieved by the actions of the Board, one such taxpayer, HWCC-Tunica, LLC (HWCC), which owns and operates Hollywood Casino-Tunica, filed a bill of exceptions in the Circuit Court of Tunica County and paid the taxes under protest.

The trial court, finding that the failure of the Board to comply with statutory notice and public hearing requirements rendered the tax levy unlawful, ordered a refund. We affirm.

<u>**FACTS AND PROCEDURAL HISTORY**</u>

¶2.     On August 14, 2014, the Board of Supervisors of Tunica County, Mississippi (the Board), determined that the county's Tax Assessor Norma Anderson had "completed and filed the 2014 real and personal assessment rolls of Tunica County, Mississippi . . . ." Before the Board at that time was a document entitled "August Recaps 2014," which showed that the assessed value of property in Tunica County had decreased in the amount of $4,678,672, a 1.87% decrease from the 2013 assessment.

¶3.     On August 25, 2014, County Administrator of Tunica County Michael Thompson gave a presentation to the Tunica County Board of Supervisors regarding the county budget for the 2015 fiscal year. His presentation informed that the county's existing millage rates were "[i]nadequate and unsustainable." He cited "[d]ecreasing assessed property values," long-term debt figures, "[i]nadequate or nonexistent fees for essential services," and a dependency on tax revenue from a declining gaming industry. An advertisement was published in the Tunica *Times* on August 22, 2014, according to a proof of publication. This advertisement stated:

> The Tunica County Board of Supervisors will hold a public hearing on its proposed budget and proposed tax levies for the fiscal year 2014-2015 on Thursday, August 28, 2014 at 5:00 p.m. at the Tunica County Courthouse located at 1300 School Street, in Tunica.
>
> The Tunica County Board of Supervisors is now operating with projected total budget revenue of $45,368,673. Four (4) percent or $2,043,000 of such revenue is obtained through ad valorem taxes. For the next fiscal year, the

2

proposed budget has total projected revenue of $40,000,000. Of that amount, eight (8) percent or $3,100,000 is proposed to be financed through a total ad valorem tax levy.

For the next fiscal year, the Tunica County Board of Supervisors plans to increase your ad valorem tax millage rate by 5.00 mills, due to the decrease in assessed property values.

Any citizen of Tunica County is invited to attend this public hearing on the proposed budget and tax levy, and will be allowed to speak for a reasonable amount of time and offer tangible evidence before any vote is taken.

The advertised meeting occurred on August 28, 2014, and a report was introduced from Barbara Tuchel of Tunicians for Transparency in Government, who made various suggestions for budget reductions.

¶4.　The minutes also include a document, dated August 28, 2014, and entitled "RESOLUTION OF THE BOARD OF SUPERVISORS OF TUNICA COUNTY, MISSISSIPPI AUTHORIZING AND APPROVING THE HOLDING OF A PUBLIC HEARING . . . RELATING TO GIVING THE PUBLIC NOTICE OF A HEARING TO BE HELD ON THE PROPOSED BUDGET AND PROPOSED TAX LEVIES FOR TUNICA COUNTY . . . ." This resolution purported to fix a public hearing on August 28, "relating to the proposed budget and proposed tax levies for Tunica County, Mississippi, all relating to fiscal year 2014-2015 . . . ."[1] The resolution also said that "notice shall be given as required by law that the Board of Supervisors will consider and adopt a resolution adopting the final budget and tax levy resolution contemplated thereby at the Board of Supervisors' meeting

---

[1] From this it appears that the Board resolved to set up a public hearing which was to take place on the same day the hearing was already set to take occur, according to the notice which had been published six days before, on August 22, 2014.

3

to be held on Tuesday, September 2, 2014 beginning at 5:00 p.m. . . . ."[2] The Board then recessed the August 28 meeting and indicated in its minutes that it would continue the meeting to September 4, 2014.

¶5. The next meeting of the Board took place, according to the minutes, on September 2, 2014. The minutes of the September 2 meeting do not reflect that the Board took up or considered the matter of the millage rate increase. The Board then recessed the September 2 meeting and indicated in its minutes that it would continue the meeting to September 4, 2014.

¶6. The minutes show that the Board did meet on September 4, 2014. The only budget-related item of business considered by the Board at that time was a request from Michael Thompson, County Administrator, that a "Work Session for the 2015 Budget Year" be scheduled for September 11, 2014. The Board approved the request. The Board then recessed the September 4 meeting and indicated in its minutes that it would continue the meeting to September 11, 2014.

¶7. The Board next convened on September 15, 2014, according to the minutes. At its September 15 meeting, the Board approved the fiscal year 2015 budget for the county, which included an *ad valorem* tax levy. The "General County" millage rate increased from the 9.14 mills figure from the fiscal year 2013 levy to 15 mills, an increase of 5.86 mills. The "County

---

[2] The record does not reflect that notice ever was published in a newspaper regarding the Board's September 2, 2014, meeting. The only notice relating to the August 28 hearing was published on August 22, 2014.

4

Road Construction and Maintenance" millage rate was levied at 9 mills.[3] The "Yazoo-Mississippi Delta Joint Water Management District" millage rate increased from 0.71 mills in the fiscal year 2013 levy to 0.75 mills, an increase of 0.04 mills. The "G.O. Bonds Sinking Fund" levy increased from 15.77 mills in the fiscal year 2013 levy to 17 mills, an increase of 1.23 mills. The Tunica County School District "School Shortfall Notes" millage rate decreased from 1.32 mills in the fiscal year 2013 levy to .32 mills, a decrease of 1 mill. In total, according to the fiscal year 2015 levy order, the change in the millage rate from the fiscal year 2013 levy was 15.13 mills.[4]

¶8.    Also at the September 15 meeting, the Board adopted a "RESOLUTION MEMORIALIZING DISCUSSION RELATING TO THE BUDGET FOR TUNICA COUNTY AND ADOPTING A BUDGET FOR THE FISCAL YEAR BEGINNING OCTOBER 1, 2014." This resolution claimed that "notice of today's budget discussion and potential action relating to the budget and the tax levy had been advertised as required by

---

[3] No millage rate was set for county road construction and maintenance in the fiscal year 2013 levy.

[4] HWCC-Tunica, LLC, indicates in its brief that the "Board met and increased the millage rate by 16.09 mills," but that figure does not take into account the increase in the "Yazoo-Mississippi Delta Joint Water Management District" millage rate, nor does it take into account the "School Shortfall Notes" millage rate decrease.

law."[5] According to the resolution, "[a] copy of the Proof of Publication relating thereto was received and directed to be attached hereto and made a part hereof as Exhibit 'A.'"[6]

¶9.     The page immediately preceding the resolution (Book 166, Page 251) in the Board minutes (Book 166, Page 250, 414) is entitled "NOTICE OF A TAX INCREASE AND PUBLIC HEARING ON THE PROPOSED BUDGET AND PROPOSED TAX LEVIES FOR TUNICA COUNTY BOARD OF SUPERVISORS," and states the following:

> The Board of Supervisors of Tunica County, Mississippi will hold a public hearing on a proposed ad valorem tax revenue increase for fiscal year 2014-15 and on its proposed budget and proposed tax levies for fiscal year 2014-2015 on (September 30, 2014 at 5:00 p.m.) at the (Tunica County Courthouse located at 1300 School Street, Tunica County Mississippi).
>
> Tunica County, Mississippi is now operating with projected total budget revenue of **$45,368,673** in which (4.5 percent) or **$2,043,000** of such revenue is obtained through ad valorem taxes. For the next fiscal year, the proposed budget has total projected revenue of **$35,621,996**. Of that amount, Eight (8.42) percent or **$3,000,000** is proposed to be financed through a total ad valorem tax levy.
>
> For next fiscal year, Tunica County, Mississippi plans to increase your ad valorem tax millage rate by **19.36** mills from 64.72 to 84.08. This increase means that you will pay more in ad valorem taxes on your home, automobile tag, utilities, business, fixtures, and equipment and rental property.
>
> Tunica County, Mississippi proposes to increase the millage because of General Obligation Bond Debt and decreasing assessed property values and decreasing gaming tax revenue that supports and sustains the County's general operations.

---

[5] Apart from the notice of hearing published in the Tunica *Times* on August 22, 2014, no other such notice published before September 15, 2014, appears in the record before this Court.

[6] No such proof of publication appears in the Board's minutes. *See infra*, fn. 7.

6

Any citizen of Tunica County, Mississippi is invited to attend this public hearing on the proposed ad valorem tax levy increase, and will be allowed to speak for a reasonable amount of time and offer tangible evidence before any vote is taken.

(Emphasis in original.)[7]

¶10.    The next meeting of the Board occurred on September 30, 2014. In accordance with the above notice, a public hearing took place. Various citizens, including Joe Jackson, Bobby Papasan, Brook Taylor, Barbara Tuchel, Dollie Hudson, Kathlene Gann, and Supervisor Henry Nickson, Jr., appeared before the Board to express "[b]udget [c]oncerns."

¶11.    On October 10, 2014, Hollywood Casino-Tunica, or HWCC-Tunica, LLC (HWCC), filed a Bill of Exceptions/Notice of Appeal in the Circuit Court of Tunica County, Mississippi. HWCC argued, *inter alia*, that, because notice requirements of the Mississippi Code had not been complied with in levying *ad valorem* taxes for fiscal year 2014-15, the tax levy was "illegal and void." The Board filed its answer on November 3, 2014. Both parties filed briefs in the Circuit Court of Tunica County. A hearing on the HWCC's Bill of Exceptions was held on June 5, 2015. At the hearing, the Board moved *ore tenus* to dismiss, arguing that the bill of exceptions had not been timely filed and had not been signed by the president of the Tunica County Board of Supervisors and that such procedural failings deprived the circuit court of jurisdiction.

¶12.    The trial court entered an order on October 13, 2015. It held that, because the Board failed to comply with the advertising requirements contained in Mississippi Code "Section

---

[7] A proof of publication appears in the record demonstrating that something was published in the Tunica *Times* on September 19, 2014. But the September 19 proof of publication does not appear to have been entered on the minutes of the Board.

7

27-39-203(2)(a)," which it found were mandatory, "HWCC was overcharged for those ad valorem taxes it paid for the 2014 - 2015 fiscal year."[8]

¶13.   Aggrieved, the Board filed a notice of appeal on October 30, 2015.

## DISCUSSION

### 1.   Whether the circuit court lacked jurisdiction over the tax levy appeal.

¶14.   The Board argues that the Circuit Court of Tunica County lacked jurisdiction to hear the appeal because HWCC had failed to challenge the tax levy under Mississippi Code Section 11-51-77 (Rev. 2012) and to comply with the procedural requirements thereof, which the Board asserts constitute the exclusive method by which tax assessments may be challenged. The Board argues that HWCC's filing of a bill of exceptions pursuant to Mississippi Code Section 11-51-75 (Rev. 2012) was erroneous. The Board continues that, even if filing a bill of exceptions was proper, HWCC's failure to comply with the procedural requirements of Mississippi Code Section 11-51-75 deprived the trial court of jurisdiction.

¶15.   Mississippi Code Section 11-51-77 provides a procedure for challenging a decision of boards of supervisors "as to the assessment of taxes":

> Any person aggrieved by a decision of the board of supervisors or the municipal authorities of a city, town or village, as to the assessment of taxes, may, within ten days after the adjournment of the meeting at which such decision is made, appeal to the circuit court of the county, upon giving bond,

---

[8] On February 13, 2015, HWCC had filed a Supplement to Bill of Exception/Notice of Appeal, attached to which was a receipt from the Tunica County Tax Collector showing that the assessed taxes had been paid as of January 26, 2015. Accordingly, HWCC, in addition to repeating its request that the trial court find the tax levy illegal and void, asked that the trial court "instruct the tax collector of Tunica County, Mississippi, to refund the increased ad valorem taxes paid by it subject to this appeal."

8

with sufficient sureties, in double the amount of the matter in dispute, but never less than One Hundred Dollars ($100.00), payable to the state, and conditioned to perform the judgment of the circuit court, and to be approved by the clerk of such board, who, upon the filing of such bond, shall make a true copy of any papers on file relating to such controversy, and file such copy certified by him, with said bond, in the office of the clerk of the circuit court, on or before its next term. The controversy shall be tried anew in the circuit court at the first term, and be a preference case, and, if the matter be decided against the person who appealed, judgment shall be rendered on the appeal bond for damages at the rate of ten percent (10%) on the amount in controversy and all costs. If the matter be decided in favor of the person who appealed, judgment in his favor shall be certified to the board of supervisors, or the municipal authorities, as the case may be, which shall conform thereto, and shall pay the costs. The county attorney, the district attorney, or the Attorney General, if the state, county or municipality be aggrieved by a decision of the board of supervisors or the municipal authorities of a city, town, or village as to the assessment of taxes, may, within twenty days after the adjournment of the meeting at which such decision is made, or within twenty days after the adjournment of the meeting at which the assessment rolls are corrected in accordance with the instructions of the state tax commission, or within twenty days after the adjournment of the meeting of the board of supervisors at which the approval of the roll by the state tax commission is entered, appeal to the circuit court of the county in like manner as in the case of any person aggrieved as hereinbefore provided, except no bond shall be required, and such appeal may be otherwise governed by the provisions of this section.

Miss. Code Ann. § 11-51-77 (Rev. 2012). Mississippi Code Section 11-51-75 provides a procedure for challenging a "judgment or decision" of a board of supervisors:

Any person aggrieved by a judgment or decision of the board of supervisors, or municipal authorities of a city, town, or village, may appeal within ten (10) days from the date of adjournment at which session the board of supervisors or municipal authorities rendered such judgment or decision, and may embody the facts, judgment and decision in a bill of exceptions which shall be signed by the person acting as president of the board of supervisors or of the municipal authorities. The clerk thereof shall transmit the bill of exceptions to the circuit court at once, and the court shall either in term time or in vacation hear and determine the same on the case as presented by the bill of exceptions as an appellate court, and shall affirm or reverse the judgment. If the judgment be reversed, the circuit court shall render such judgment as the board or

municipal authorities ought to have rendered, and certify the same to the board of supervisors or municipal authorities. Costs shall be awarded as in other cases. The board of supervisors or municipal authorities may employ counsel to defend such appeals, to be paid out of the county or municipal treasury. Any such appeal may be heard and determined in vacation in the discretion of the court on motion of either party and written notice for ten (10) days to the other party or parties or the attorney of record, and the hearing of same shall be held in the county where the suit is pending unless the judge in his order shall otherwise direct. . . .

Miss. Code Ann. § 11-51-75 (Rev. 2012).

¶16. The trial court stated that, were it to determine that HWCC had filed a bill of exceptions, it "would most likely have to find it lacked jurisdiction to entertain this matter." The trial court held, however, that it was not "bound by the captions of the pleadings" and found that Section 11-51-77 governed, "[b]ecause the decision being appealed derives from a decision involving a *tax matter* . . . ." (Emphasis in original.) The trial court denied the Board's *ore tenus* motion to dismiss, finding that the Board was estopped from complaining that the bill of exceptions was filed untimely and that it lacked the Board president's signature in light of the Board's failure to comply with the mandatory statutory advertising requirements. The trial court found that the bond requirement of Section 11-51-77 was unnecessary because "the court understands that the tax heretofore imposed upon the plaintiff has been paid."

¶17. In deciding that Section 11-51-77 governed, the trial court relied on *Lenoir v. Madison County*, 641 So. 2d 1124 (Miss. 1994). In *Lenoir*, the plaintiff challenged the denial of an agricultural use valuation, which had been granted continually for more than forty years, and which had resulted in extensively lower *ad valorem* taxes on the property.

10

*Id.* at 1125. The taxes, which had been only a few hundred dollars per year, increased to approximately $95,000 per year as a result of the denial of the agricultural use valuation. *Id.* The plaintiff sought relief from the Madison County Board of Supervisors in the form of a correction of the assessed taxes and the agricultural use valuation denial, but the Board denied her petition. *Id.* As a result, the plaintiff posted a bond and filed a complaint pursuant to Section 11-51-77 in the Circuit Court of Madison County. *Id.*

¶18.    Madison County sought dismissal for lack of jurisdiction, arguing that a bill of exceptions was required pursuant to Section 11-51-75, and the trial court dismissed. *Id.* at 1126. This Court therefore was presented with the question of "whether filing a complaint with the Circuit Court of Madison County vested that court with subject matter jurisdiction over issues regarding tax assessments, or whether a bill of exceptions was required to be filed with the circuit court as a prerequisite to acquisition of subject matter jurisdiction." *Id.* at 1126.

¶19.    This Court found that the absence of any statutory requirement for filing a bill of exceptions contained within Section 11-51-77 was indicative of "the legislature's *intent not to require* the filing of a bill of exceptions as a prerequisite to an appeal to the circuit court from an adverse decision of the board of supervisors, *if* a § 11-51-77 assessment of taxes is the subject of the appeal." *Id.* at 1129 (emphasis in original). The Court reversed and remanded the judgment of the circuit court, holding that:

> [A]s a matter of law, Miss. Code Ann. § 11-51-77 (1972), controls Miss. Code
> Ann. § 11-51-75 (1972), and, consequently, *where a tax matter is involved*,
> the filing of a bill of exceptions is not a prerequisite to vesting the circuit court

with subject matter jurisdiction over appeals to the circuit court from decisions of the board of supervisors.

*Id.* (emphasis in original).

¶20.    The Board argues that, because HWCC failed to post a bond in accordance with that statute, the circuit court lacked jurisdiction. HWCC responds that Section 11-51-77 governs appeals of tax assessments, not tax levies by a Board of Supervisors, and that this Court has reviewed bills of exceptions in cases involving other "tax matters."

¶21.    In *City of Ocean Springs v. Home Builders Association of Mississippi, Inc.*, 932 So. 2d 44, 47 (Miss. 2006), the Mayor and Board of Aldermen of Ocean Springs, Mississippi, adopted "a Comprehensive Plan, which included separate impact fee ordinances which authorized the assessment, collection, and expenditure of 'development impact fees' for various municipal improvements, services, equipment, and vehicles." Home Builders Association of Mississippi, Inc. (Home Builders), filed a bill of exceptions claiming that the development impact fees "constituted facial and per se illegal taxes which the City did not have the power to enact." *Id.* The Circuit Court of Jackson County agreed that "the impact fees were actually taxes, and the ordinances were unconstitutional, *i.e.*, beyond the legal authority of the City" and found that "the issue is one for the Legislature rather than the courts." *Id.* at 448. This Court agreed: "Because these fees constitute a tax, the municipality must have enabling legislation in order to levy and collect this tax. The municipality has been given no such authority and in imposing such fees has stepped outside of its authority." *Id.*

¶22.    While the question before this Court, whether a tax levy requires an appeal pursuant to Section 11-51-77 or whether a bill of exceptions may be filed pursuant to Section 11-51-

75, was not before this Court in the ***Home Builders*** case, HWCC is correct that this Court did, in that instance, consider a bill of exceptions in the context of a tax levy. The ***Lenoir*** Court merely pointed out that "***where a tax matter is involved***, the filing of a bill of exceptions is not a prerequisite to vesting the circuit court with subject matter jurisdiction over appeals to the circuit court from decisions of the board of supervisors." ***Lenoir***, 641 So. 2d at 1132 (emphasis in original). The Court in ***Lenoir*** made clear that "the case *sub judice* concerns a § 11-51-77 ***tax assessment issue***." ***Id.*** at 1131 (emphasis in original).

¶23.    The ***Lenoir*** Court further observed: "***The purpose of a bill of exceptions is to bring the proceedings before the tribunal to the court to enable that court to determine whether the tribunal acted properly with reference to what was before it***." ***Id.*** at 1128 (quoting ***McIntosh v. Amacker***, 592 So. 2d 525, 528 (Miss. 1991) (Banks, J., concurring in part, dissenting in part)) (emphasis in ***Lenoir***). "[I]n appealed tax matters, a bill of exceptions is not necessary for the circuit court since the proceedings of the board of supervisors are not in issue, only the decision of the board of supervisors is reviewed." ***Lenoir***, 641 So. 2d at 1128.

¶24.    Here, the bill of exceptions filed by HWCC challenged the Board's compliance with the mandatory statutory notice requirements set forth in then-Mississippi Code Section 27-39-203(2) (2012). According to the bill of exceptions, "[f]ailure to comply renders the budget and tax levy illegal and void." The bill of exceptions takes issue with the procedures the Board employed in levying the tax. Therefore, the Board's proceedings are in issue and, under the language in ***Lenoir***, require a bill of exceptions. ***Lenoir***, 641 So. 2d at 1128. The

Tunica County Circuit Court was obliged to determine whether the Board had "acted properly with reference to what was before it." *Id.* (emphasis removed).

¶25. Moreover, Section 11-51-77, by its plain language, applies to "a decision of the board of supervisors . . . as to the *assessment* of taxes . . . ." (Emphasis added.) Mississippi Code Section 27-39-317 (Rev. 2010) rightly contemplates that a levy and an assessment are different. According to Section 27-39-317:

> The board of supervisors of each county shall . . . levy the county ad valorem taxes for the fiscal year, and shall, by order, fix the tax rate, or levy, for the county, for the road districts, if any, and for the school districts, if any, and for any other taxing districts; and the rates, or levies, for the county and for any district shall be expressed in mills or a decimal fraction of a mill.

Miss. Code Ann. § 27-39-317. "Said tax rates, or levies, shall determine the ad valorem taxes *to be collected* upon each dollar of valuation, upon the assessment rolls of the county . . . ." Miss. Code Ann. § 27-39-317 (emphasis added). Thus, according to Mississippi Code Section 27-39-317, the levy is a rate by which the tax assessor ascertains the amount of *ad valorem* taxes to be assessed, then collected by the tax collector. The formula applies to all nonexempt landowners.

¶26. Before this Court for decision are both the assessment of taxes to the county's taxpayers and the levy of taxes, applicable to all of the county's nonexempt landowners. The Board *levied* a tax, after which HWCC filed a Bill of Exceptions in which it argued that the levy was void. HWCC, after the tax had been *assessed* and had been paid under protest, supplemented the Bill of Exceptions with an additional request for relief: that the taxes which it had paid under protest be refunded.

14

¶27.   Because the trial court ultimately made its decision after the taxes had been assessed and paid under protest, we find no error in the trial court's treatment of HWCC's bill of exceptions as a Section 11-51-77 appeal from a tax assessment.

¶28.   We find that the trial court should not be held  in error in its determination that payment of the tax under protest was sufficient to waive the bond requirement. This Court has held that payment of an assessment pursuant to Section 11-51-77, then Section 62 of the Mississippi Code of 1930, "under protest does not prevent the appellant from prosecuting his appeal from an erroneous assessment." *Grenada Bank v. Town of Moorhead*, 160 Miss. 163 (1931) (citing *Gordon v. Gibbs*, 11 Miss. 473 (1844)). Consequently, the cases cited by the Board which stand for the proposition that the trial court lacks appellate jurisdiction when an appealing taxpayer fails to post a bond pursuant to statute, are inapposite. *See Miss. Dep't of Revenue v. AT&T Corp.*, 101 So. 3d 1139 (Miss. 2012) (trial court lacked appellate jurisdiction because taxpayer paid the assessed tax under protest instead of filing suit to restrain collection of taxes and complying with statutory bond requirements); *Khurana v. Miss. Dep't of Revenue*, 85 So. 3d 851 (Miss. 2012) (trial court lacked appellate jurisdiction because taxpayer failed to comply with statutory requirements by timely posting a bond or paying taxes under protest); *5K Farms, Inc. v. Miss. Dep't of Revenue*, 94 So. 3d 221 (Miss. 2012) (in a case involving an assessment of taxes, this Court held that the statutory pretrial bond requirement "is a requirement governing appellate jurisdiction rather than a procedural requirement").

15

¶29. The Board further argues that the trial court lacked appellate jurisdiction in the present case because HWCC failed to obtain the signature of the president of the board of supervisors.

¶30. Section 11-51-75 requires that the bill of exceptions be "signed by the person acting as president of the board of supervisors . . . ." In *City of Jackson v. Varia, Inc.*, 241 Miss. 705, 133 So. 2d 16, (1961), this Court considered a case in which Varia, Inc., had sought "to maintain a house trailer on the premises . . . where it conducted a drive-in theater." The City Council had denied the permit and Varia filed a bill of exceptions in the Circuit Court of Hinds County. *Id.* The bill of exceptions "was signed by one of the attorneys for [Varia], instead of by the Mayor, and the same was not approved by the Mayor or Commissioners." *Id.* This Court held that Section 1195, Mississippi Code of 1942, now Section 11-51-75, had not been "complied with in any manner" and that, as a result, "the circuit court had no jurisdiction to enter any judgment except that of dismissal of the appeal." *Id.* at 16-17 (citing *Yandell v. Madison Cty.*, 79 Miss. 212, 30 So. 606 (1901)).

¶31. HWCC argues that *Varia* involved a complete failure to file a bill of exceptions because that factual scenario existed in the case upon which it relied, *Yandell v. City of Madison County*. In *Yandell*, this Court held that the circuit court lacked jurisdiction because, while the decision of the board of supervisors had been appealed, no bill of exceptions had been filed: "such appeal without bill of exceptions is irregular or void, for the circuit court would possess no means of determining whether the judgment of the board of supervisors should be affirmed or reversed . . . ." *Yandell*, 30 So. at 606-607. In *Varia*, in

16

addition to the lack of the mayor's signature, the Court found that the bill of exceptions was deficient because "[n]o fact, judgment or decision was embodied in the purported bill of exceptions since there was no testimony offered by [Varia] to show that the ordinance in question was not a reasonable exercise of the police power of the municipal authorities and for the promotion of the public health and welfare." *Varia*, 1113 So. 2d at 16.

¶32. In *Gallagher v. City of Waveland*, 182 So. 3d 471, 473-74 (Miss. Ct. App. 2015), *cert. denied* 181 So. 3d 1010 (Jan. 21, 2016), the Mississippi Court of Appeals declined to dismiss for lack of jurisdiction a bill of exceptions that was unsigned by the mayor. The Court of Appeals referred to *Wilkinson County Board of Supervisors v. Quality Farms, Inc.*, 767 So. 2d 1007, 1012 (Miss. 2000), in which this Court found that the circuit court should have dismissed for lack of jurisdiction because the bill of exceptions was incomplete and was "fatally defective in that pertinent and important facts are omitted therefrom," and therefore "the court does not have a record upon which it can act intelligently." *Wilkinson*, 767 So. 2d at 1012.

¶33. The Court of Appeals in *Gallagher* noted that it had distinguished the *Wilkinson* case in *McKee v. City of Starkville*:

> While neither McKee nor the City complied with the procedural requirements set forth in *Wilkinson*, the bills of exceptions filed with the circuit court contained the "pertinent and important facts and documents" and constituted "a record upon which (the court could) intelligently act." *Wilkinson*, 767 So. 2d at 1012 (¶ 14). Furthermore, the supreme court has previously addressed the merits of an appeal where there were two bills of exceptions before the circuit court—one filed by local residents without the mayor's signature and another filed by the Board of Aldermen with the mayor's signature. *See Hall v. City of Ridgeland*, 37 So. 3d 25, 32 (¶ 17) (Miss. 2010). Therefore, under these facts, we decline to dismiss for lack of subject matter jurisdiction.

*Gallagher*, 182 So. 3d at 475 (citing *McKee v. City of Starkville*, 97 So. 3d 97, 101 (Miss. Ct. App. 2012)). "Thus, this Court found that when the bill of exceptions contains 'all pertinent and important facts and documents,' and constitutes a complete record on which the court could intelligently act, the appeal will not be dismissed for lack of subject-matter jurisdiction." *Id.*

¶34.    HWCC argues that no discretion exists with regard to the signing of the bill of exceptions by a mayor or the president of a board of supervisors:

> The general rule with respect to bills of exceptions when presented to the proper official for signature appears to be that such officer or official cannot arbitrarily refuse to sign and return the bill of exceptions merely because he deems the same to be incorrect, but that it is his duty to point out wherein he deems the same to be incorrect, and to note his corrections thereon, and to sign the same as correct.

*Reed v. Adams*, 236 Miss. 333, 111 So. 2d 222, 224 (1959). Section 1195 of the Mississippi Code of 1942, now Mississippi Code Section 11-51-75, "made it the mandatory duty of the mayor to sign a bill of exceptions when timely presented to him."[9] *Id.* at 225. In the event of a refusal of the presiding officer to sign a timely presented bill of exceptions, protestants of the board's decision may petition for a writ of mandamus to compel the signature. *Roach v. Tallahatchie Cty.*, 78 Miss. 303, 29 So. 93 (1901).

¶35.    Here, the bill of exceptions made specific claims with regard to the actions of the board of supervisors and incorporated as an exhibit the pertinent minutes. Under law of this State, the lack of the signature of the president of a board of supervisors, standing alone, does

---

[9] Nothing in the record indicates that the bill of exceptions was timely presented to the president of the Board of Supervisors by HWCC. No indication appears in the record with regard to why the president did not sign HWCC's bill of exceptions.

18

not divest the circuit court of jurisdiction. Under the facts presented, we hold that the absence

of the Board president's signature is not sufficient to defeat circuit court jurisdiction.

> **2.      Whether the circuit court erred in holding that the Board failed to comply with the mandatory advertising requirements of Mississippi Code Section 27-39-203(2).**

¶36.    Mississippi Code Section 27-39-203(1) provides: "[t]he governing body of all taxing

entities shall hold a public hearing at which time the budget and tax levies for the upcoming

fiscal year will be considered." Miss. Code Ann. § 27-39-203(1) (Rev. 2017). The statute in

effect in 2014[10] was Mississippi Code Section 27-39-203(2) (2012), which provided the

following:

> The public hearing shall be advertised in accordance with the following procedures. The advertisement shall be no less than one-fourth ( ¼ ) page in size and the type used shall be no smaller than eighteen (18) point and surrounded by a one-fourth-inch solid black border. The advertisement may not be placed in that portion of the newspaper where legal notices and classified advertisements appear. It is the intent of the Legislature that the advertisement appears in a newspaper that is published at least five (5) days a week, unless the only newspaper in the county is published less than five (5) days a week. It is further the intent of the Legislature that the newspaper selected be one of general interest and readership in the community, and not one of limited subject matter. The advertisement shall be run once each week for the two (2) weeks preceding the adoption of the final budget. The advertisement shall state that the taxing entity will meet on a certain day, time and place fixed in the advertisement, which shall be not less than seven (7) days after the day the first advertisement is published, for the purpose of hearing comments regarding the proposed budget and proposed tax levies. Any increase in the projected budget revenues or any increase in the millage rate over the current fiscal year shall be explained by the governing body giving the reasons for the proposed increase. A taxing entity collecting taxes in more than

---

[10] Mississippi Code Section 27-39-203(2)(a) appears only in the statutory revisions which became effective on July 1, 2015, the statute's current form. Miss. Code Ann. § 27-39-203(2)(a) (Rev. 2017). The trial court applied the 2015 revision, which was not in effect at the time the Board acted.

one (1) county shall make the required advertisement by publication in each county where the taxing entity collects taxes.

Miss. Code Ann. § 27-39-203(2) (2012). The trial court held that, because the Board failed to comply with the statutory advertising requirements, which it found were mandatory, "HWCC was overcharged for those ad valorem taxes it paid for the 2014 - 2015 fiscal year." The trial court noted that "[i]t appears that the first time the public was made aware that the Board had adopted the 2014 - 2015 budget with its tax increases was when such was announced at the September 30, 2014, meeting."

¶37.  On appeal, the Board argues that, because "taxpayers had received actual notice, the intent of the notice statute was satisfied." (citing *Austin*, Opinion No. 97-022, 1997 WL 47285 (Miss. A.G.  January 24, 1997).[11] That Attorney General's opinion noted that "[t]he law required that notice of the intent to hold the referendum election, and the particulars of that election be conveyed to the citizenry by way of publication for at least three consecutive weeks in a local newspaper." *Id.* According to the opinion, "[t]hat was accomplished by the numerous news articles published in the local newspaper" and "more people probably had notice of the election through the news articles than would have had through a legal notice." *Id.* The Attorney General opined that "any defect in the form of the notice would not invalidate the referendum election and the results thereof." *Id.*

¶38.  The Attorney General's opinion cited a decision of this Court:

---

[11] "Though attorney general opinions are not binding, they may be considered by this Court . . . ." *McAdams v. Perkins*, 204 So. 3d 1257, 1262 (Miss. 2016) (citing *City of Durant v. Laws Constr. Co.,* 721 So. 2d 598, 604 (Miss. 1998)).

20

[I]f a statute does not expressly declare that a particular act is essential to the election's validity or that omission of the particular act will render the election void, the statute is considered directory rather than mandatory, so long as the irregular act is not intended to affect the integrity of the election . . . .

*Rogers v. Holder*, 636 So. 2d 645, 647-48 (Miss. 1994) (citing *Riley v. Clayton*, 441 So. 2d 1322, 1326 (Miss. 1983)). It is clear that this principle governs in the context of an election contest: "[i]f the violated statute is directory rather than mandatory and there is no allegation or proof of fraud, the non-complying ballots are valid and properly counted." *Id.* The Board argues that the principle is the same in the context of a tax levy and that the notice requirements in Mississippi Code Section 27-39-203 are directory and not mandatory.

¶39. The Board continues that, under Mississippi Code Section 27-39-203(9), "the remedy is not to void the levy but to require the proper notice to be given, with an opportunity to be heard, before the funds are spent." Mississippi Code Section 27-39-203(9) states that "[a]ny governing body of a tax entity shall be prohibited from expending any funds for the applicable fiscal year until it has strictly complied with the advertisement and public hearing requirements set forth in this section." Miss. Code Ann. § 27-39-203(9) (Rev. 2017). The Board argues that because the statute does not specifically state that tax levies would be void for failure to follow statutory notice requirements, the requirements are "directory" rather than "mandatory" and that, instead of voiding the tax increases altogether, the trial court should "only have prevented the county from expending funds from the increases until the notice advertisement was corrected and a hearing held based on the statute."

¶40. HWCC responds that "[t]he power to levy and collect taxes is conferred by statute, and when so conferred, can be exercised only in the manner pointed out by the statute."

*Chickasaw Cty. v. Gulf, Mobile & Ohio R. Co.*, 195 Miss. 754, 15 So. 2d 348, 351 (1943) (citing *Miss. R.R. Comm'n v. Western Union Tel. Co.*, 107 Miss. 442, 65 So. 505 (1914) ("[T]he power to assess property for taxation and to levy and collect taxes is conferred, not by the common law, but by statute, and when so conferred can be exercised only in the manner pointed out by the statute . . . .")

¶41.    HWCC cites *Gulf & Ship Island Railroad Company v. Harrison County*, 192 Miss. 114, 4 So. 2d 717 (1941), in which this Court considered the effect of failure to comply with statutory requirements for a tax levy. This Court held that "[t]he wisdom of the statute is not for us to decide. We have only the duty to construe it as written. The requirements of the statute are mandatory and the order in this case does not comply with them, and the levy is not legal."[12] *Id.* at 718. And HWCC also cites *Burke v. Leggett*, in which this Court considered the following statute:

> The board of supervisors of any county may levy a special tax for the erection, remodeling, enlarging, or repairing of the courthouse, jail, or other county buildings, and the orders making such special levy shall designate the objects for which the levy is made, and the fund shall be applied to no other purpose.

*Burke v. Leggett*, 118 Miss. 660, 79 So. 843, 844 (1918) (quoting Miss. Code 1906, § 324). This Court held that "[t]he statute, section 324, Code of 1906, is mandatory and not directory" and that "[t]he power to make the levy is given by this statute, which provides clearly that the purpose of the levy shall be designated." *Id.* This Court stated that the levy

---

[12] The statute at issue in *Gulf & Ship Island Railroad* was Section 3227, Mississippi Code of 1930, which now appears as Mississippi Code Section § 27-39-317 (Rev. 2010).

at issue was "unquestionably void because the order of the board failed to designate the objects for which the levy was made." *Id.*

¶42.    HWCC further cites the Due Process Clause of the Mississippi Constitution: "No person shall be deprived of life, liberty or property except by due process of law." Miss. Const. art. 3, § 14. *See Miss. Power Co. v. Miss. Pub. Serv. Comm'n*, 168 So. 3d 905, 916 (Miss. 2015) (order granting rate increases reversed and refund ordered to taxpayers because "the Commission failed to fulfill its duties and obligations pursuant to statutory directives and our existing law . . . the overwhelming majority of 186,000 ratepayers was not accorded due process of law from the beginning.")

¶43.    The Attorney General's opinion and the cases upon which the Board relies are exclusively election contest cases and they are inapplicable here. The remedy of Mississippi Code Section 27-39-203(9) requires strict compliance with advertisement and public hearing requirements. It is true that Section 27-39-203(9) prohibits expenditure of funds until strict compliance has been observed, but Section 27-39-203(2) sets forth specific requirements for advertisement of public hearings prior to the adoption of the final budget, and, in the event of a millage increase, an explanation is required.

¶44.    In the present case, the August 22, 2014, Tunica *Times* advertisement announced a public hearing on the tax levies that was to take place on August 28, 2014. A board of supervisors meeting did take place on August 28, 2014, but no hearing on the proposed tax levies occurred. On September 15, 2014, no hearing having taken place, the Board ordered the tax levies and increased the millage rates. On September 19, 2014, a public hearing on

"proposed ad valorem tax revenue increase for fiscal year 2014-15" was advertised in the Tunica *Times* and was to take place on September 30, 2014.[13] Such hearing did occur on September 30, 2014, and taxpayers attended to voice concerns.

¶45.    Statutory requirements relating to the levy of taxes have been ruled by this Court to be mandatory, not directory, and this Court has determined those noncompliant tax levies to have been void. **Gulf & Ship Island RR Co.**, 4 So. 2d at 718; **Burke**, 79 So. at 844.

¶46.    The Board did not comply with the notice and hearing requirements of Section 27-39-203(2) prior to the September 15, 2014, tax millage increase. Only *after* the Board had increased the millage rate, was Section 27-39-203(2)—in part—complied with, because a hearing was advertised to take place on September 30, 2014. However, publication occurred but once, on September 19, 2014.[14] Instead of voiding the tax levy altogether, were this Court to require proper notice and a hearing, the statutory strict compliance requirement would be thwarted. The record reflects that the Board already has conducted such hearing on September 30, 2014, which was followed by the present bill of exceptions. Any attempt at this late time to remediate the Board's omissions and salvage its failed tax levy would be highly impractical and would require the judicial crafting of procedures not contemplated by established law. This Court declines to engage in such an enterprise.

---

[13] Again, the September 19, 2014, publication is referenced in the Board's response to HWCC's brief in the trial court. The proof of publication was attached as an exhibit but does not appear to have been entered on the Board's minutes. *See supra* fn. 7.

[14] *See supra* fn. 7.

¶47. The trial court noted the Board's differentiation of general tax levies and tax levies for road and construction: "[t]he county's argument is that because the road and bridge construction tax levies in Tunica County had been eliminated for over ten (10) years prior, the levying of such taxes in the 2014-2015 budget should be viewed as 'new' taxes, rather than an increase in taxes." The County changed the millage rate for "County Road Construction and Maintenance" from 0 mills to 9 mills.

¶48. The Board argues on appeal that "the County Road Construction and Maintenance levy is better characterized as a new levy that does not require notice."[15] For that proposition, the Board cites an opinion in which the Mississippi Attorney General considered whether a new town was exempt from the notice and public hearing requirements of Section 27-39-203 when the new town was attempting to "levy[] a municipal general ad valorem tax for the first time[.]" *Meyer*, Opinion No. 98-0341, 1998 WL 382974 (Miss. A.G. June 19, 1998). The Attorney General cited Section 21-33-45 (Supp. 1997),[16] which provided that "[i]f the rates of levies for the municipality or taxing district are an increase from the previous fiscal year, then the proposed rate or levy increase shall be advertised in accordance with Secs. 27-39-203 . . . ." The Attorney General opined that "advertising of the initial tax levy of a

---

[15] The Board continues to argue that "[u]nder Mississippi law, the courts cannot interfere with the discretion of the county board of supervisors to expend tax funds for the construction and repair of roads and highways." While that may be true, at issue here is not the propriety of the *expenditure* of the tax revenue designated for road and construction, but rather the *levy* of taxes for that purpose. The statute requires notice and a public hearing for all tax levies and makes no distinction based on the purpose for which the taxes are levied. *See* Miss. Code Ann. § 27-39-203(2) (2012).

[16] Currently, this section appears as Mississippi Code Section 21-33-45 (Rev. 2015).

municipality is not required pursuant to Section 27-39-203 since that section contemplates a tax increase, rather than a first tax levy." *Meyer*, Opinion No. 97-341, 1998 WL 47285 (Miss. A.G. June 19, 1998).

¶49.   In that case, the trial court noted that Section 27-39-203(1) had changed. In 1998, it stated "[n]o taxing entity may budget an increased amount of ad valorem tax revenue . . . unless it advertises its intention to do so . . . ." Miss. Code Ann. § 27-39-203(1) (1995). In 1999, the statute changed as follows: "All taxing entities . . . shall hold a public hearing at which the budget for the following fiscal year will be considered, regardless of whether that budget will be increased or decreased from the current budget . . . ." Miss. Code Ann. § 27-39-203(1) (1999). The statute changed in 2012 to its present wording, which did not include reference to an increase/new levy distinction: "The governing body of all taxing entities shall hold a public hearing at which time the budget and tax levies for the upcoming fiscal year will be considered." Miss. Code Ann. § 27-39-203(1) (Rev. 2017).

¶50.   Furthermore, Section 21-33-45 (Rev. 2015) applies to "[t]he governing authorities of each municipality." If "the rates or levies for the municipality . . . are an increase from the previous fiscal year," then Section 27-39-203 applies. Section 27-39-203 applies to "[t]he governing body of all taxing entities."

¶51.   More fundamentally, no evidence is found in the record to the effect that the increase of 0 mills to 9 mills for "County Road Construction and Maintenance" was a new levy or one that the Board revived for fiscal year 2014-15. Indeed, the Attorney General opinion cited

26

by the Board applies to a new municipality's levying taxes for the first time. No such scenario exists in the present case.

## CONCLUSION

¶52. We hold that the Circuit Court of Tunica County had jurisdiction to entertain the appeal pursuant to Mississippi Code Section 11-51-77 or pursuant to Mississippi Code Section 11-51-75. We hold also that the Tunica County Board of Supervisors altogether failed to comply with the notice and public hearing requirements of Section 27-38-203. Accordingly, we affirm the judgment of the Circuit Court of Tunica County.

¶53. **AFFIRMED.**

**WALLER, C.J., RANDOLPH, P.J., KING, COLEMAN, MAXWELL, BEAM, CHAMBERLIN AND ISHEE, JJ., CONCUR. COLEMAN, J., CONCURS WITH SEPARATE WRITTEN OPINION, JOINED BY WALLER, C.J., RANDOLPH AND KITCHENS, P.JJ., AND MAXWELL, J. CHAMBERLIN, J., JOINS IN PART.**

**COLEMAN, JUSTICE, CONCURRING:**

¶54. I concur with the majority's opinion and decision to affirm the trial court. I write separately to address the issue raised in our earlier order for additional briefing, *i.e.*, whether the requirement found in Mississippi Code Section 11-51-75 that the president of the board from which an appeal is sought must sign a bill of exceptions is a jurisdictional prerequisite that must be met before the circuit court can hear such an appeal. Because the statute in question neither mandates nor forbids that the courts do anything whatsoever, I fail to see how they can infringe on the court's procedural prerogative in violation of the Mississippi Constitution's separation of powers mandate. Indeed, the signature as a jurisdictional requirement is not a function of the statutory language at all; it results from the Courts' own

27

confusing precedent. Accordingly, I would hold that the signature requirement of Section 11-51-75 is not unconstitutional.

¶55. Furthermore, I would take the present opportunity to clarify our precedent as to bills of exceptions as more fully set forth below, which should simplify the process for citizens and their attorneys by returning to the procedure as it was historically. The bill of exceptions is a vehicle for appeals that existed at the time Mississippi became a state. It was the means for appealing lower court decisions for well over half of Mississippi's two-hundred year history. However, if in its bill-of-exceptions jurisprudence of the last fifty years, the Mississippi Supreme Court has not made a mess of the bill of exceptions, what we have done will do until the mess gets here. It is time to revisit some of the decisions that have obscured what was once an oft-used and well-understood vehicle for appeals and give clarity to those whose practice of law and work on the bench requires them to work with the bill of exceptions. I propose doing so by the straightforward expedient of returning to the process as it was for much of our history.

**I.     Three primary legal principles govern the instant case.**

¶56. As will be discussed below, our pronouncements on the use of the bill of exceptions over the last few decades have been confusing and, to be frank, outright inconsistent. Accordingly, in order to seek jurisprudential clarity, three primary legal principles must be remembered and emphasized throughout any analysis of the signature requirement. First, the Constitution of 1890 gives the Legislature authority to set the appellate jurisdiction of the circuit courts. Second, the question before the Court in the case *sub judice* is one of

28

interpreting legislative intent. Third, before declaring a statute unconstitutional, we must be satisfied that it is unconstitutional beyond a reasonable doubt.

> A. The Constitution of 1890 gives the Legislature power to assign appellate jurisdiction to the Circuit Courts.

¶57. Article 6, Section 156 of the Mississippi Constitution of 1890 establishes jurisdiction in the circuit courts as follows:

> The circuit court shall have original jurisdiction in all matters civil and criminal in this state not vested by this Constitution in some other court, and *such appellate jurisdiction as shall be prescribed by law.*

(Emphasis added.) The last nine words of Section 156 authorize the Legislature to grant and define appellate jurisdiction to the circuit courts. *Johnson v. Sysco Food Servs.*, 86 So. 3d 242, 245 (¶ 13) n.16 (Miss. 2012); *Knox v. L.N. Dantzler Lumber Co.*, 148 Miss. 834, 114 So. 873 (1927). The Legislature conferred appellate jurisdiction upon the circuit court in Section 11-51-75 (and its statutory ancestors).

> B. The question before the Court in the case *sub judice* is one of legislative intent.

¶58. Because the Legislature establishes circuit court appellate jurisdiction, and does so in Section 11-51-75 by authorizing appeal from a county or municipal board decision via a bill of exceptions, the question of whether the signature requirement is jurisdictional is one of statutory interpretation. Of course, our goal when interpreting statutes is to divine the "true meaning of the Legislature." *Scaggs v. GPCH-GP, Inc.*, 931 So. 2d 1274, 1276 (¶ 10) (Miss. 2006) (quoting *Stockstill v. State*, 854 So. 2d 1017, 1022-23 (¶ 13) (Miss. 2003)). "Our role is to determine the legislative intent and constitutionality of acts passed by the

29

Legislature, and if we interpret a statute contrary to the intent or will of the Legislature, that body has the absolute authority to change the statute to suit its will." ***Stockstill v. State***, 854 So. 2d 1017, 1023 (¶ 13) (Miss. 2003).

¶59. The first two of the three primary principles that should guide the Court's holdings today lend themselves to a simple conclusion. Before we can declare the signature requirement found in Section 11-51-75 to be unconstitutional as a jurisdictional prerequisite, we must first determine whether the Legislature intended it to be a jurisdictional prerequisite at all.

   C. Before declaring the signature requirement unconstitutional, we must be satisfied that it is unconstitutional beyond a reasonable doubt.

¶60. A strong presumption exists that a statute is constitutional, and we will not declare it to be otherwise unless it is proven unconstitutional beyond a reasonable doubt. ***Atwood v. State***, 183 So. 3d 843, 845 (¶ 5) (Miss. 2016) (citing ***Johnson v. Sysco Food Servs.***, 86 So. 3d 242, 243-44 (Miss. 2012)); *see also* ***Wilson v. State***, 194 So. 3d 855, 868 (Miss. 2016) ("The Court may be able to overrule its own cases, but absent a showing beyond a reasonable doubt that a statute is unconstitutional, the Court may not overrule statutes."). We resolve all doubts in favor of the statute's constitutionality. ***Atwood***, 183 So. 3d at 845.

¶61. As more fully discussed below, a bill of exceptions is, in and of itself, a jurisdictional requirement should an aggrieved party wish to appeal a decision of a county or municipal board. However, the long history of our opinions in bill of exceptions cases convinces me that a perfect bill of exceptions is not a jurisdictional requirement and, more narrowly and pertinent to today's case, the signature of the president of the board is not a jurisdictional

30

requirement. Given that we must resolve doubts in favor of constitutionality, I would hold that Section 11-51-75 does not establish the signature requirement as a jurisdictional prerequisite; accordingly, as it does not exist in the statute, it cannot be an unconstitutional infringement upon the procedural prerogative of the court.

## II. The bill of exceptions has been a vehicle for appeals since the first days of Mississippi's statehood.

*A.     Bills of exceptions were the vehicle for appealing lower court decisions.*

¶62.    From Mississippi's very beginning, the bill of exceptions provided the vehicle for appealing lower court decisions to the Mississippi Supreme Court. *See, e.g., Lewis v. Sulcer*, 1 Miss. 21 (1818); *Hackler's Heirs v. Cabel*, 1 Miss. 91 (1921). It was, simply, "a written statement of objections to the decision of the court upon a point of law, made by a party to the cause, and properly certified by the judge or court who made the decision." *Williams v. Ramsey*, 52 Miss. 851, 856 (1876). It purposed "to put the decision objected to upon record, for the information of the court having cognizance of the cause in error." *Id.*

¶63.    Prior to the creation of the bill of exceptions in England by the statute of Westminster, the record did not contain the evidence and interlocutory rulings of the lower court. *Williams*, 52 Miss. at 865; *see also* 4 C.J.S. *Appeal and Error* § 577 (2017). The statute required trial judges to sign the bill and assured that the exceptions would be in the record. *Id.* Mississippi had a statute that provided that, should the trial judge refuse to sign the bill, two attorneys present for the proceedings could do so. *Id.* at 857-858. In the alternative, the appellant could petition the Supreme Court for mandamus to compel the trial judge to sign the bill. *Ex parte Robson*, 1 Miss. 412 (1831). The statutes providing for the bill of

31

exceptions as a means to appeal a criminal matter remain today. Miss. Code Ann. §§ 99-17-39 through 99-17-45 (Rev. 2015).

¶64.     The appealing party presented the bill to the trial court first rather than the reviewing court. *Williams*, 52 Miss. at 857-858; *Cabel*, 1 Miss. at 92; Lewis, 1 Miss. at 22. The procedure is in that regard similar to our modern procedure of filing a notice of appeal in the trial court rather than the appellate courts. Miss. R. App. P. 4(a). To timely file the bill of exceptions, the appellant need only place the bill in the hands of the clerk whose task it later would be to file the bill with the reviewing court. 4 C.J.S. *Appeal and Error* § 587 (2017). The rights of the appellant are not then lost should the trial judge delay in signing the bill. 4 C.J.S. *Appeal and Error* § 588 (2017).

¶65.     After presentment of the bill to the trial court, the trial court and the appellant would reach agreement on its contents in a process known as "settlement." 4 C.J.S. *Appeal and Error* § 585 (2017). After settlement, the trial court would send the bill to the appellate court. The Supreme Court, or High Court of Errors and Appeals, would be restrained by the bill of exceptions and, like today's record on appeal, could not look outside the matters contained in the bill of exceptions when considering the appeal. *Vaughan v. State*, 11 Miss. 553, 554, 1 Morr. St. Cas. 245, 3 S. & M. 553 (1844).

> B.     *The Legislature expanded the bill of exceptions to provide for appeals from the decisions of boards governing county and city governments.*

¶66.     When the Mississippi Legislature adopted the bill of exceptions as a vehicle for appealing the decisions of county and municipal boards, the procedure for its use was clear because it long had been used to appeal lower court decisions, as discussed above. Of

32

course, using the bill of exceptions to appeal a decision of a governing body changed the dynamic in that, rather than being an appeal between two adversaries as to which a neutral judge would verify the record, the governing board was opposed to the party seeking the appeal. Despite standing in opposition to the appealing party, the president of the board must still sign the bill of exceptions, thereby verifying the accuracy of the record. The resulting tension leads us to where we are today, with presidents of boards of supervisors and mayors of towns refusing, often on the advice of counsel, to sign the bill of exceptions. Nevertheless, the bill of exceptions was a workable, and really quite simple, mechanism for appeal – even in the county or municipal board context.

¶67. The first expansion of the bill of exceptions beyond courtroom appeals occurred when the Mississippi Legislature passed a statute that provided that "it shall and may be lawful for all persons who feel themselves aggrieved by the judgment of the board of police of the county, to appeal by bills of exception or *certiorari* to the Circuit Court of his county." *Yalobusha Cty. v. Carby*, 11 Miss. 529, 546 (1844)*, overruled on other grounds by Dismukes v. Stokes*, 41 Miss. 430, 435 (1867). The board of police was empowered to hear audit claims against the county and was otherwise the forerunner of the modern county board of supervisors, *Carby*, 11 Miss. at 542-543 (Brief of Defendant in Error). The statute allowing appeals therefrom via a bill of exceptions closely resembled the modern counterpart at issue today, but it also allowed appeal via a writ of *certiorari* to the circuit court. *Id.* at 546. In *Board of Police of Yalabusha County v. Ray*, 20 Miss. 342, 12 S. & M. 342 (1849),

the Court noted that an appeal from a decision of the board of police first would be filed with the board and would be timely if there filed within the time set by statute.

¶68. Rather than filing anything with the circuit court immediately, the "appeal" was first filed with the board, much like a notice of appeal is filed with the trial court – not the appellate court – today. *See Faison v. City of Indianola*, 156 Miss. 872, 127 So. 558, 559 (1930); *Spencer v. Washington Cty*, 92 Miss. 230, 45 So. 863 (1908). Then, again similar to a direct appeal, the bill of exceptions would be prepared, or "settled," through the joint effort of the aggrieved party and the board. Finally, the clerk of the board would forward the completed, signed bill of exceptions to the circuit court. *See Spencer*, 92 Miss. at 230, 45 So. at 864.

> C. *In requiring the president of the board to sign the bill of exceptions, the Legislature provided a means for verifying the record, but did not establish a requirement that, if not met, automatically robbed the circuit court of the authority to hear the appeal.*

¶69. Turning to the signature requirement in the context of appeals from boards of supervisors and aldermen, the Court through the centuries[17] has both considered unsigned bills of exceptions and refused to consider them. It is clear that the bill of exceptions itself is a requirement, and that the parties cannot waive it. *McIntosh v. Amacker*, 592 So. 2d 525, 527 (Miss. 1991) ("The bill of exceptions required by the general statute is necessary to vest the circuit court with appellate jurisdiction."); *Cox v. Bd. of Supervisors of Madison Cty.*, 290 So. 2d 629 (Miss. 1974); *Bridges v. Clay Cty. Supervisors*, 57 Miss. 252 (1879).

---

[17]With the celebration during the current year of Mississippi's bicentennial, the plural becomes appropriate.

However, imperfect bills of exceptions did not automatically equate to a complete absence of jurisdiction. Rather, the imperfections spoke to the absence of an adequate record. *Michael v. West Hatchie Drainage Dist.*, 135 Miss. 798, 100 So. 392, 393 (1924); *see also Adcock v. Bd. of Supervisors of Winston Cty.*, 191 Miss. 379, 2 So. 2d 556 (1941); *Bussey v. City Council of City of Greenville*, 102 So. 182 (Miss. 1924) (suggesting that failure to include complete bill of exceptions defeated attempted appeal because it left the reviewing court without a record).

¶70. Without question the bill of exceptions acted to preserve the record of proceedings before the county or municipal board, *see Hall v. Franklin County*, 184 Miss. 77, 185 So. 591, 595 (1939), and like the signature of the judge in cases at law appealed via the bill of exceptions, the signature of the president of the board certified the accuracy of the record. *Jones v. Bd. of Supervisors of Newton Cty.*, 110 Miss. 328, 70 So. 404 (1915); *Williams v. Bd. of Supervisors of Rankin Cty.*, 109 Miss. 278, 68 So. 249 (1915). The refusal to consider unsigned bills of exceptions was not based upon the idea that the appellate court had not the power, or jurisdiction, to hear it but, rather, upon the problem presented by an unsigned bill of exceptions that could not be considered to fulfill its purpose of providing a reliable record of the proceedings below.

¶71. In *Graves v. Monet*, 15 Miss. 45, 7 S. & M. 45 (1846), for example, the High Court of Errors and Appeals refused to consider an issue on appeal raised in an unsigned bill of exceptions. In providing the reason, the Court wrote, " [W]e must be controlled by the record, and are therefore compelled to disregard the first bill of exceptions." *Id.* at 47.

Although in ***Roach v. Tallahatchie County***, 78 Miss. 303, 29 So. 93 (1901), the Court affirmed the circuit court's dismissal of a bill of exceptions because the president of the board of supervisors did not sign it, nothing in the one-paragraph opinion suggests that it departed from the long-established law that the signature was required to verify the record rather than give power to the court to hear the matter.

¶72.    ***Polk v. City of Hattiesburg***, 109 Miss. 872, 69 So. 675 (1915), best demonstrates that the absence of the signature of the president of the board or mayor from the bill of exceptions does not deprive the circuit court of the power, or jurisdiction, to review the case.  In ***Polk***, the City of Hattiesburg closed a public alley, and a citizen of the city aggrieved by the decision sought to appeal the decision via a bill of exceptions.  ***Id.*** at 675-676.  On the day of the decision, the aggrieved citizen presented his bill of exceptions to the mayor and commissioners.  ***Id.*** at 676.  The record showed that the mayor and commissioners reviewed the bill and agreed it to be a correct statement of the facts and decision.  The next day, the mayor stated that the bill of exceptions was correct, but he refused to sign it on advice of the city attorney.  ***Id.***  The circuit court dismissed the bill of exceptions due to the absence of the signature, but the Supreme Court reversed.  ***Id.***

> When a bill of exceptions embodying the facts and decisions is duly presented, it is made the duty of the presiding officer to sign the same.  He has no discretion in the matter.  If it is admitted that the bill of exceptions is a correct memorial of the facts and decisions, can the circuit court dispense with the signature of the mayor, and inquire into the merits of the appeal, after having first ascertained that the bill of exceptions stated the facts and decisions?  We believe that ***McGee v. Beall,*** 63 Miss. 457, and ***Robinson v. Mhoon***, 68 Miss. 713, 9 South. 887, answer this query in the affirmative.  The appellant in this case did all that was in his power to do "by preparing and tendering a proper

36

> bill to the proper officer," and he "ought not to suffer by reason of his [the officer's] neglect to promptly sign the same."

*Polk*, 69 So. at 676. Once again, the Court made it clear that the purpose of the signature was not to confer jurisdiction, but to affirm the correctness of the record. Because in *Polk*, the mayor and board agreed the bill was accurate, the circuit court should have reached the merits. Even the *Polk* dissent phrased its disagreement in terms of who had the authority and duty to certify the record rather than whether the signature conveyed jurisdiction upon the circuit court. *Polk*, 69 So. at 677-678 ("Since the Legislature has not conferred upon the circuit courts power to settle bills of exception to the action of boards of supervisors and municipal authorities, it necessarily follows that such courts have no right so to do.") (Smith, J., dissenting).

¶73. *Polk* can be contrasted with *Wilkinson County v. Tillery*, 122 Miss. 515, 84 So. 465 (1920). There, an owner of a cow, Tillery, submitted a claim to the county for the value of the cow after it was killed in a dipping process ordered by the county. *Id.* at 465. The county board of supervisors refused to pay. *Id.* Tillery filed a petition for appeal with the clerk of the board and requested the clerk "to make and file transcript of my claim and order of the board, returnable to the next session of the circuit court of said county." *Id.* The clerk of the board sent the circuit court a record containing Tillery's written claim and the order of the board of supervisors denying it. *Id.* "Some months" later, Tillery filed, in circuit court, a petition for *certiorari* seeking to require the clerk of the board to send the court an unsigned bill of exceptions that Tillery maintained was correct. *Id.* However, while the county admitted it had not signed the bill of exceptions, the board disputed its accuracy. *Id.* The

37

circuit court granted the writ of *certiorari* and, when the unsigned bill of exceptions arrived, overruled a motion by the county to quash it. *Id.* The circuit court rendered a verdict on the bill of exceptions in favor of Tillery. *Id.*

¶74. On appeal by the county, the Supreme Court of Mississippi held that the circuit court erred in issuing *certiorari* and in refusing to quash the bill of exceptions. *Id.* at 466. Contrasting the case to *Polk*, the *Tillery* Court wrote, "Since the record fails to show that this unsigned bill of exceptions was in point of fact agreed to as being true and correct, then there is no bill of exceptions embodying the proceedings had before the board of supervisors." *Id.* The issue, again, was the reliability of the record, not the power of the circuit court to hear an appeal.

**III.** **Over the last half-century, the Court has held it lacks jurisdiction to hear cases that are fatally flawed for lack of a record, but in reality the flaw in the record did not remove the fundamental authority of the court to preside over the bill of exceptions appeal.**

¶75. The Court lost sight of the distinction between its jurisdiction, or power to hear a case, and the effect of an insufficient record on the merits of an appeal via bill of exceptions in *Stewart v. City of Pascagoula*, 206 So. 2d 325 (Miss. 1968). There, the City of Pascagoula authorized a contract with Jackson County assuming the county's water and sewer bonds. *Id.* at 326. Two aggrieved persons, Stewart and Brown, sought to appeal the decision via a bill of exceptions. *Id.* While signed by the president of the mayor, *Id.* at 327, the bill of exceptions did not include the contract at issue. *Id.* at 326. The *Stewart* Court wrote, "The authority and jurisdiction of the circuit court are thus limited and circumscribed by statute. As an appellate court, it considers the case as presented by the bill of exceptions. It can not

go outside the record as made in the bill of exceptions." In writing the quoted sentences, the Court without citation to relevant authority equated the usually fatal flaw of an insufficient record with the authority of the circuit court to hear an appeal from a county or municipal board via a bill of exceptions. As shown above, it is true that the jurisdiction of the circuit court to hear appeals from county and municipal boards is set forth in the bill of exceptions statute. Additionally, it is true that the bill of exceptions sets forth the record that constrains the circuit court's review. However, it does not necessarily follow that the failure to provide an adequate record, fatal though it may be to the appeal, deprives the circuit court of the authority to hear the case. With respect, the *Stewart* Court jumped to its conclusion.

¶76. In doing so, the *Stewart* Court misplaced reliance on two cases. The Court wrote, "This Court has held that a proper bill of exceptions on appeal is necessary to confer jurisdiction on the appellate court." In so writing, the Court relied on *McDonald v. Spence*, 179 Miss. 342, 174 So. 54 (1937), and *Richmond v. Enochs*, 109 Miss. 14, 67 So. 649 (1915). At issue in *McDonald* was the sufficiency of a bill of exceptions from chancery court to the Supreme Court. *McDonald*, 179 Miss. at 342, 174 So. at 54. The statute then authorizing appeals from chancery court via a bill of exceptions contained more, and more specific, requirements of the bill of exceptions than the statute at issue in *Stewart* and in today's case. *McDonald*, 179 Miss. at 324, 174 So. at 54. In *McDonald*, the chancellor did not sign the bill of exceptions but, rather, signed a statement regarding a "special bill of exceptions" which, in effect, directly disavowed that the purported bill of exceptions met the statutory requirements. *Id.* In *Richmond*, the appellee moved to strike the transcript from

39

the record. *Strickland*, 109 Miss. at 14, 67 So. at 649. The transcript at issue was submitted after the term of court ended to counsel for the appellant, who then delivered it to the attorney for the appellee, who refused to examine and correct it. *Id.* at 14, 650. Upon receiving the transcript back, counsel for the appellant filed it with the circuit clerk without providing it to the circuit judge. *Id.* The Supreme Court granted the motion to strike the transcript, *id.* but nowhere does the *Richmond* Court discuss appellate jurisdiction or whether the improper transcript robbed it of the jurisdiction otherwise to hear the appeal.

¶77. Undiscussed by the *Stewart* Court was the *Polk* Court's holding that the flaw in the bill of exceptions there – the absence of the required signature – was not fatal to the circuit court's exercise of jurisdiction over the matter. *Stewart* also contradicts the later case of *Yellow Cab Company of Biloxi v. City of Biloxi*, 372 So. 2d 1274 (Miss. 1979), in which the Court noted the omission from the bill of exceptions of briefs filed with the city but wrote, "Even though a bill of exceptions is defective, if the judgment is erroneous on its face, it will be reversed. . . ." *Id.* at 1277.

¶78. One year after *Stewart*, the Court decided *Weathersby v. City of Jackson*, 226 So. 2d 739 (Miss. 1969). There, J.L. Weathersby opposed a rezoning ordinance pending before the Jackson City Council. *Id.* at 739. After the city approved the ordinance, he appealed via a bill of exceptions. *Id.* The circuit court dismissed the bill of exceptions for the failure of Weathersby, *et al.*, to include a copy of the ordinance. *Id.* at 740. In contrast to *Stewart*, in *Weathersby*, the Court reversed the circuit court's decision and held that enough information

existed elsewhere within the bill of exceptions to determine the content of the ordinance. *Id.*

at 741. Once again, the Court utilized the term "jurisdiction" in its reasoning.

> We feel that the actual decision of the City Council was correctly and truthfully stated and embodied in the bill of exceptions. The highest officer of the City of Jackson approved the statement of the decision contained in the bill of exceptions. The bill of exceptions was sufficient to confer *jurisdiction* on the circuit court to hear and consider the appeal as an appellate court.

*Id.* (emphasis added).

¶79. There is a dissonant ring to the Court's use of the word jurisdiction in *Stewart* and *Weathersby*. Appellate jurisdiction in the circuit court is, by operation of the Mississippi Constitution, a matter of legislative prerogative. Miss. Const. art. 6, § 156. While Section 11-51-75 by its plain language requires that an appeal from a county or municipal board be accomplished via a bill of exceptions and that the appeal be made within ten days, it contains very little else that sets forth jurisdictional requirements. Notably absent from the statute – unlike the statute at issue in *McDonald* upon which the *Stewart* Court in part relied – are specific content requirements. Jurisdiction is defined as a "court's power to decide a case or issue a decree." *Jurisdiction*, Black's Law Dictionary (10th ed. 2014). When the *Stewart* and *Weathersby* Courts write in terms of jurisdiction, they misuse the term. It is clear that failing to embody a sufficient record in the bill of exceptions can be fatal to the attempted appeal – as shown above, such has been the case since the first days of our State. Yet, in other cases, we have allowed appeals made via the bill of exceptions to proceed despite flaws. *Yellow Cab Company of Biloxi v. City of Biloxi*, 372 So. 2d 1274 (Miss. 1979). However, we should today clarify *Stewart* and *Weathersby* and make it clear that, fatal or

not, an insufficient record does not rob the circuit court of jurisdiction as the term is properly understood. Such clarification would harmonize our bill of exceptions jurisprudence of the second half of the twentieth century and today with that of Mississippi's first one hundred and thirty-three years. Further, it would allow flexibility to the circuit courts to consider whether, imperfections aside, the record presented by the bill of exceptions does provide sufficient information for review, as happened in *Polk* and the possibility of which was recognized in *Yellow Cab*.

IV. **No good reason exists to believe the Legislature intended the signature of the president of the county or municipal board to confer jurisdiction on the circuit court.**

¶80. Moreover, the same conclusion applies to the signature requirement. As discussed above in the first part of the instant opinion, nothing in the wording of the statute applies the signature requirement to the courts. By its plain language and as recognized in early caselaw, it sets a ministerial duty of the president of the underlying board. As demonstrated in *Polk*, the court did not consider the absence of a signature to be a jurisdictional bar. Later, in *Gill v. Woods*, 226 So. 2d 912 (Miss. 1969), the Court once again held that the circuit court must consider a bill of exceptions unsigned by the president of the Marshall County Board of Supervisors. More strikingly than in *Polk*, where the board agreed that the bill of exceptions was accurate, the *Gill* Court reversed the circuit court's dismissal of an unsigned bill of exceptions where the record failed to show that the board or its president objected to the form and content of the bill of exceptions. *Gill*, 226 So. 2d at 915.

¶81. It is one thing to conclude that a matter presented to a court is fatally defective, such as when a complaint fails to state a viable claim for relief and is dismissed pursuant to Rule 12(b)(6) of the Mississippi Rules of Civil Procedure or, more aptly, when an appellate court refuses to consider an assignment of error because the appellant fails to present a sufficient record. It is quite another to conclude that a court has no power, or jurisdiction, to entertain a matter before it. In light of the foregoing authorities setting forth the history of the uses of the bill of exceptions as a vehicle for appeals, first from trial courts and later, by legislative expansion, from county and municipal boards, I would hold that the failure to present a bill of exceptions signed by the president of the board falls into the former category rather than the latter. If the absence of the signature were an absolute procedural bar, then the *Polk* Court would not have allowed the matter before it to proceed in the absence of the signature and the *Tillery* Court would not have bothered pointing out the disagreement of the board with Tillery regarding the accuracy of the bill of exceptions at issue there.

¶82. Because I am convinced the Legislature never intended the signature requirement to be a jurisdictional prerequisite and, given the three operating principles set forth at the beginning of the instant opinion, I would hold that the signature requirement found in Section 11-51-75 is constitutional.

V. **The Court should take the present opportunity to realign bill of exceptions practice with the language of the statute and the correct, historical practice of appeals from county and municipal boards.**

¶83. Finally, to restore fairness and sensibility to the bill of exceptions process, I would hold that, going forward, the ten-day deadline contained in the statute applies to the filing of

43

the bill of exceptions with the clerk of the county or municipal board. In ***Board of Supervisors of Marshall County v. Stephenson***, 160 Miss. 372, 134 So. 142 (1930), the Court held that the aggrieved party had perfected an appeal from a decision of the board of supervisors on the day the bill of exceptions was filed with the clerk of the board of supervisors. ***Id.*** at 143-144. The Court continued, writing that once filed with the clerk of the board of supervisors, the bill of exceptions "should have been filed at once [in circuit court] by the clerk of the board of supervisors." ***Id.*** *See also* ***Shannon Chair Co. v. City of Houston***, 295 So. 2d 753, 755 (Miss. 1974) (holding that a bill of exceptions not presented to the mayor within ten days of adjournment of the pertinent meeting was untimely and must be dismissed); ***Faison v. City of Indianola***, 156 Miss. 872, 127 So. 558, 559 (1930) (bill of exceptions considered timely when presented to the board). Accordingly, as long as the bill is filed for consideration with the board within ten days, I would recommend the courts consider it to be timely. As was the practice when bills of exception were more commonly used, nothing would be filed with the circuit court until the clerk of the board fulfilled the duty of submitting the signed bill of exceptions to the circuit court. Although in our later cases, such as ***Lowndes County v. McClanahan***, 161 So. 3d 1052, 1055 (¶ 13) (Miss. 2015), we wrote in passing that a bill of exceptions is filed in the circuit court, I have been unable to find a case in which we considered the issue and overruled the established practice of filing the bill with the clerk of the board first, with the clerk to follow the statutory directive of being the person responsible for filing the bill with the circuit court.

¶84. If the aggrieved party and the board dispute the accuracy of the record and for that reason or any other the president of the board refuses to sign the bill of exceptions as required by the statute, then the aggrieved party can, as was the practice, file a petition for mandamus with the circuit court. The circuit court is best equipped to decide and create a record of such disputes. The circuit court likewise is equipped to consider whether other imperfections in the bill of exceptions render the record before it insufficient to consider the matters excepted.

¶85. However, if we are to return to the historical practice surrounding the bill of exceptions outlined above, some work must be done. In ***Bowen v. DeSoto County Board of Supervisors***, 852 So. 2d 21 (Miss. 2003), the person aggrieved by the DeSoto County Board of Supervisors' decision did not, in fact, file a proposed bill of exceptions with the board within ten days, as was the historical practice. Rather, the aggrieved party, John Bowen, filed a notice of appeal with the circuit court within the first ten days. *Id.* at 22 (¶ 1). The circuit court dismissed the notice of appeal because Bowen never filed a bill of exceptions. *Id.* The ***Bowen*** Court held that the bill of exceptions merely functioned as a vehicle for establishing the record on appeal and was not a requirement for the circuit court to hear Bowen's appeal from the board of supervisors. *Id.* at 24 (¶ 9). The Court wrote, "In the case sub judice, Bowen properly and timely filed a notice of appeal. We find that sufficient to vest jurisdiction." *Id.* The ***Bowen*** Court's judgment cannot coexist with Section 156 of the Constitution, which mandates that circuit court appellate jurisdiction must be "prescribed by law," considering that the law which prescribes circuit court jurisdiction in appeals from

county and municipal boards mandates – and for decades has been held to mandate – the use of bills of exceptions to do so. Notably, the **Bowen** Court reached its holding without overruling or discussing the myriad earlier cases that recognized the mandatory nature of the bill of exceptions – including, *inter alia*, **Varia**. Indeed (and confusingly), after the Court handed down **Bowen**, the bill of exceptions was affirmed as a jurisdictional requirement in the later case of **McIntosh v. Amacker**, 592 So. 2d 525, 527 (Miss. 1991). **Bowen** resulted in the convoluted practice – foreign to the long, pre-**Bowen** history of the bill of exceptions – of aggrieved parties filing both a bill of exceptions with the clerk of the board and a notice of appeal in the circuit court. *See, e.g.,* **Ball v. Mayor and Bd. of Aldermen of City of Natchez**, 983 So. 2d 295, 302 (¶ 23); **Grist v. Farese**, 860 So. 2d 1182 (Miss. 2003). Today we should take advantage of the opportunity to overrule **Bowen**, which would allow clarification and simplification of the bill of exceptions process by returning to that which the statute actually provides, which is the filing of a bill of exceptions with the clerk of the appropriate county or municipal board.

## VI.    Conclusion

¶86.    Resolving doubts in favor of the constitutionality of Section 11-51-75 leads to the conclusion that the Legislature did not intend the signature requirement to be a constitutional prerequisite. Therefore, it cannot be unconstitutional as such.

¶87.    Further, I would clarify that, although the bill of exceptions itself is a jurisdictional requirement for the circuit court to hear an appeal via Section 11-51-75, imperfections in it go to the adequacy of the record rather than the authority of the court to hear the appeal.

¶88.    Finally, I would overrule the **Bowen** Court's holding that the bill of exceptions is nothing more than an optional vehicle for transmitting the record to the circuit court and that some other filing, such as a notice of appeal, can suffice to confer jurisdiction there.  In doing so, I would take the opportunity to clarify bill of exceptions practice as outlined above.

¶89.    In the case *sub judice*, the Hollywood Casino did not follow the statutory mechanism.  Rather than filing its bill of exceptions with the Tunica County Board of Supervisors, it filed the bill of exceptions and a notice of appeal directly in the circuit court.  Going forward and in light of the language of Section 11-51-75 and the clarifications I propose above, Hollywood's bill of exceptions well may be untimely for failure to submit it timely to the Tunica County Board of Supervisors.  However, given the confusion engendered by **Bowen**, I would be loathe to hold so in today's case.  In fact, as Tunica does not appear to attack the completeness of the record contained in the bill of exceptions, as was the case in **Gill v. Woods**, 226 So. 2d 912 (Miss. 1969), I would hold that the trial court committed no error in preceding.  In short, I, too, would affirm.

    **WALLER, C.J., RANDOLPH AND KITCHENS, P.JJ., AND MAXWELL, J., JOIN THIS OPINION.  CHAMBERLIN, J., JOINS IN PART.**